## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |
| W.R. GRACE & CO., *et al.*, | |
| Plaintiffs, | Adversary No. A-01-771 |
| v. | |
| MARGARET CHAKARIAN, *et al.*, and JOHN DOES 1-1000, | |
| Defendants. | |

## MOTION OF LIBBY CLAIMANTS FOR LEAVE TO APPEAL ORDER ENJOINING ACTIONS AGAINST BNSF

Claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, hereby move, pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8003(a), for leave to appeal the Bankruptcy Court's Memorandum Opinion and Order Expanding the Preliminary Injunction to Include Actions Against Burlington Northern and Sante Fe Railroad [Adv. Proc. D.I. 498], both entered on April 14, 2008 (collectively, the "Order"). This Motion is filed as an alternative to the Libby Claimants' notice of appeal, wherein they assert that the Order is appealable as of right pursuant to 28 U.S.C. § 158(a)(1) or 28 U.S.C. § 1292(a)(1). In support of this Motion, the Libby Claimants state:

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Bankr. Case D.I. 17337], as it may be amended and restated from time to time.

## Background

The suffering of the people of Libby, Montana due to asbestos disease from exposure to Libby asbestos originating from the vermiculite mine and mill operated by Grace is well chronicled.[2]  Through the Center for Asbestos Related Disease (the "CARD Clinic") in Libby, Montana, Dr. Alan C. Whitehouse and Dr. C. Brad Black have diagnosed at least 1,500 patients with asbestos related disease due to exposure to Libby asbestos in or near Lincoln County, Montana.[3]  The CARD Clinic regularly treats about 1,200 of these 1,500 patients.[4]  Since the CARD Clinic opened in 2000, more than 65 patients have died of cancer or respiratory failure related to asbestos disease.[5]  Most of those deaths have occurred since Grace filed its Chapter 11 case on April 2, 2001.[6]  Currently the CARD Clinic has over 80 patients on oxygen, and over 100 patients are severely limited, with short life expectancy.[7]  Most of these require 24 hour care.[8]

But the devastating disease in Libby, said to be 10 times more deadly than more common types of asbestosis, was not caused by Grace alone.  BNSF Railway Company[9] ("BNSF") also engaged in tortious conduct injuring the people of Libby.  The Libby Claimants' state court actions against this railroad company are premised on common negligence and strict liability claims relating to BNSF's operations on BNSF's property by BNSF personnel (the "BNSF Litigation").  The cases against BNSF are based upon proof that BNSF knew specifically of the asbestos hazard arising from BNSF's operations—including asbestos contamination on BNSF's

---

[2] [Adversary Proc. D.I. 417, p.3.]
[3] [Id., Ex. C, ¶2.]
[4] [Id.]
[5] [Id., ¶7.]
[6] Since the Chapter 11 filing, 41 clients of the firm McGarvey, Heberling, Sullivan & McGarvey in Kalispell, Montana have died of asbestos related disease.  [Id., Ex. D, ¶4.]
[7] [Id., Ex. C, ¶7.]
[8] [Id.]
[9] Along with its predecessors, the Great Northern Railway Company, the Burlington Northern Railroad Company,

property and transport of asbestos by BNSF—yet failed to meet industrial hygiene standards to protect its employees and Libby residents in neighboring areas.

Libby Claimants continue to suffer and die, without medical coverage for end stage care. The Grace Libby Medical Program does not pay for nursing home care or 24-hour home care for patients with asbestos disease. The affidavits of those who have performed the 24-hour home care, and of those who are currently performing it, show enormous suffering and terrible stress.[10] For the Libby Claimants, especially those on oxygen, these services are critical as they are unable to care for themselves, leaving exhausted family members to bear the burden, with no help from Grace.

Grace has not only failed to provide the care that the Libby Claimants need and deserve, but has sought to hinder and delay them from obtaining compensation in the tort system from BNSF and other recognized wrongdoers with no special relationship to Grace or its Chapter 11 case. Grace's attempt to extend to BNSF the preliminary injunction that Grace obtained early on its bankruptcy case to enjoin asbestos-related claims against insurers and other affiliates of Grace (the "Preliminary Injunction") goes far beyond the original purpose of the Preliminary Injunction, and far beyond the typical case where the debtor in a mass tort case seeks to enjoin suits against its insurers and affiliates to protect the bankruptcy estate. Rather, in direct contradiction to the consistent teachings of the Third Circuit—most recently in In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004)—Grace seeks to shield a non-debtor party from on-going litigation that cannot, as a matter of law, have a direct impact on Grace's estate. In Combustion Engineering and two earlier decisions, the Third Circuit concluded that the bankruptcy court did not have jurisdiction to enjoin litigation among non-debtor parties merely

---

and The Burlington Northern & Santa Fe Railway Company.
[10] [Adversary Proc. D.I. 363, Ex. A-N, Adversary Proc. D.I. 417, Ex.A.]

because the defendant claimed a right of contribution or indemnity against the debtor – as BNSF does here.

On March 31, 2008, the Bankruptcy Court properly recognized this established, controlling Third Circuit precedent when it denied requests by Grace and the State of Montana (the "State") to reconsider its order denying the expansion of the Preliminary Injunction to include the Libby Claimants' independent actions against the State (the "State Litigation"). In that decision (the "State Injunction Denial Order"),[11] the Bankruptcy Court correctly concluded that "related-to subject matter jurisdiction does not exist for the purpose of expanding the injunction to include the [State Litigation]." State Injunction Denial Order at p. 11.[12] Just two weeks later, however, on April 14, 2008, and despite Grace's complete failure to demonstrate that the BNSF Litigation is distinguishable in any meaningful way from the State Litigation, the Bankruptcy Court failed to correctly apply the same Third Circuit precedent, erroneously concluding that subject matter jurisdiction over the BNSF Litigation exists and that the expansion of the Preliminary Injunction to include the BNSF Litigation is appropriate. In subsequent proceedings wherein the Bankruptcy Court granted a stay pending appeal of the State Injunction Denial Order,[13] the Bankruptcy Court indicated that it simply disagreed with the Third Circuit precedent that the Bankruptcy Court was bound to apply.[14] This disagreement likely explains both the granting of a stay pending appeal despite the Bankruptcy Court's express determination that the appellant was not likely to succeed on appeal (the effect of which is to

---

[11] Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana [Adversary Proc. D.I. 420] and Memorandum and Opinion [Adversary Proc. D.I. 419], both entered on April 16, 2007, and Order Denying Motions to Reconsider [Adversary Proc. D.I. 484] and Memorandum Opinion [Adversary Proc. D.I. 483], both entered on March 31, 2008. Grace and the State have both filed Notices of Appeal with respect to the State Injunction Denial Order [Adversary Proc. D.I. 490, 492]. On April 11, 2008, Grace submitted a motion for leave to appeal [Adversary Proc. D.I. 495]. On April 21, 2008, the Libby Claimants submitted their opposition [Adversary Proc. D.I. 505].

[12] Reported at:  W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.), 366 B.R. 295 (Bankr. D. Del. 2007).

[13] The Libby Claimants are preparing a motion to this Court to dissolve that stay.

leave in place an injunction that the Court expressly found it had no jurisdiction to enter), and also the Court's attempt to shoe-horn the BNSF Litigation into the tiny exception left open by the Third Circuit to its rule that litigation between non-debtors may not be enjoined based on the defendant's assertion of contribution or indemnity claims against the debtor. Pursuant to this Motion, the Libby Claimants appeal to this Court to faithfully apply the Third Circuit precedent requiring that they be left free to pursue their non-bankruptcy litigation against BNSF.

### Procedural History

On April 2, 2001 (the "Petition Date"), Grace filed petitions for relief under Chapter 11 of the Code. On the same date, Grace filed an adversary complaint seeking, *inter alia*, the Preliminary Injunction.[15] The Bankruptcy Court entered a temporary restraining order on April 2, 2001,[16] and on May 3, 2001 entered the Preliminary Injunction sought by Grace.[17] On January 22, 2002, the Bankruptcy Court entered an order modifying the Preliminary Injunction to expand its scope to include certain additional affiliates of Grace.[18]

On March 26, 2007, Grace filed a motion to expand the Preliminary Injunction to include the BNSF Litigation (the "BNSF Injunction Motion").[19] Until the filing of the BNSF Injunction Motion, the BNSF Litigation proceeded uninterrupted by and without involvement of Grace for nearly six years.

On May 21, 2007, the Bankruptcy Court heard oral argument on the BNSF Injunction Motion. Upon hearing all of the arguments, the Bankruptcy Court announced that it would take the matter under advisement and orally entered a "temporary stay" of the BNSF Litigation

---

[14] [Adversary Proc. D.I. 508.]
[15] [Adversary Proc. D.I. 359, ¶ 3.]
[16] [Id.]
[17] [Id.]
[18] [Adversary Proc. D.I. 87.]
[19] Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF. [Adversary Proc. D.I. 398.]

pending its ruling.[20]  The Libby Claimants appealed.[21]  This Court, expressing concern about the

indefinite duration of the "temporary stay," set a deadline of April 15, 2008 for the Bankruptcy

Court to rule on the BNSF Injunction Motion.  W.R. Grace & Co. v. Libby Claimants (In re

W.R. Grace & Co.), 2008 WL 205310 (D. Del. 2008).  The day before the deadline expired, the

Bankruptcy Court entered the Order expanding the Preliminary Injunction to include the BNSF

Litigation.  It is from this Order that the Libby Claimants now seek leave to appeal.

**Argument**

The Order is an injunction and, as such, is immediately reviewable by this Court pursuant

to 28 U.S.C. § 158(a)(1) or 28 U.S.C. § 1292(a)(1).[22]  If this Court concludes that the Order is an

interlocutory order that requires leave to appeal under 28 U.S.C. § 158(a)(3), leave should be

granted because exceptional circumstances exist and all other criteria for granting an

interlocutory appeal have been met.

**I.    The Order is Appealable as of Right to this Court**

As an injunction, the Order is appealable by the Libby Claimants to this Court as of right

pursuant to 28 U.S.C. § 1292(a)(1).  Sections of Title 28 must be read together.  See Connecticut

Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992).  Section 158(c)(2) makes Section 1292(a)(1)

applicable to the appellate process described in Section 158(a)(3).  This analysis of Sections

158(a)(3), 158(c)(2) and 1292(a)(1) has been adopted by district courts in this Circuit and

approved by the Third Circuit Court of Appeals.  See In re Prof'l Ins. Mgmt., 246 B.R. 47, 59

---

[20] [Bankr. Case D.I. 15948, p. 94:1.]

[21] District Court Case No. 07-609.

[22] The Libby Claimants have asserted this jurisdictional argument twice before to this Court.  See Case No. 06-26, District Crt. D.I. 5, 15; Case No. 07-609, District Crt. D.I. 6, 11.  In those cases, however, the Libby Claimants were challenging the entry of "temporary stays" as improperly entered preliminary injunctions.  While the Libby Claimants maintain that their arguments in those cases were correct, this Court did not agree.  W.R. Grace & Co. v. Libby Claimants (In re W.R. Grace & Co.), 2006 WL 1313190 (D. Del. 2006); W.R. Grace & Co. v. Libby Claimants (In re W.R. Grace & Co.), 2008 WL 205310 (D. Del. 2008).  In this case, there is no dispute that the Order is a preliminary injunction.

(D. N.J. 2000), vacated and remanded on other grounds, 285 F.3d 268, 282 n.16 (3d Cir. 2002) (approval of District Court's analysis of appellate jurisdiction); Honig v. Broege (In re Midstate Mortgage Investors Group, L.P.), 2006 WL 3308585, *3-4 (D. N.J. 2006); In re Reliance Acceptance Group, Inc., 235 B.R. 548, 553 (D. Del. 1999); D'Avella, Jr. v. City of Newburgh (In re Bertoli), 1987 WL 8196, *4 (D. N.J. 1987).

In Prof'l Ins. Mgmt., the district court concluded jurisdiction existed over the appeal pursuant to Sections 158(c)(2) and 1292(a)(1), without the need to resort to discretion to grant leave to appeal, because "an injunction, whether permanent or preliminary, is appealable." Prof'l Ins. Mgmt., 246 B.R. at 59. The Third Circuit explicitly approved the district court's analysis, explaining: "[W]e agree that the District Court, sitting as an appellate court, was authorized to hear the appeal from the Bankruptcy Court as an appealable injunctive order under 28 U.S.C. § 1292(a)(1) . . . ." Prof'l Ins. Mgmt., 285 F.3d at 282 n.16.

Similarly, in Midstate Mortgage, the district court recently affirmed that Section 158(c) makes Section 1292(a) applicable to the appellate process described in Section 158(a). "Thus, where the orders entered in the bankruptcy court are in the form of injunctive relief, the district court, sitting as an appellate court, is authorized under Section 1292(a) to hear the appeal without the need to resort to discretion to grant leave to appeal." Midstate Mortgage, 2006 WL 3308585, *3-4.

Likewise, this Court has also concluded that bankruptcy injunctions are appealable as of right pursuant to 28 U.S.C. § 1292(a)(1). Reliance Acceptance, 235 B.R. at 553. In Reliance Acceptance, which involved an appeal to this Court from a bankruptcy court's injunction, this Court explained the interplay of the jurisdictional statutes:

> 28 U.S.C. § 158(a) governs the court's jurisdiction to review orders of the bankruptcy court. It provides that district courts have jurisdiction to hear

appeals "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Section 158(c)(2) provides that "[a]n appeal under subsection (a) ... of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts...."

28 U.S.C. § 1292(a) governs appeals from the district courts to the courts of appeals and provides that a party has an appeal as of right to the court of appeals from a district court order granting a preliminary injunction. Carson v. American Brands, Inc., 450 U.S. 79 (1981). Cf. 11 Wright & Miller, Federal Practice and Procedure § 3923 ("An order that prohibits a party from pursuing litigation in another court is unquestionably an injunction for purposes of interlocutory appeal under 28 U.S.C. § 1292(a)(1).").

Consequently, the court looks to sections 158(c)(2) and 1292(a) to find the defendants have a right to appeal to this court at this time the Bankruptcy Court's preliminary injunction order.

Reliance Acceptance, 235 B.R. at 553. Similar analysis was employed by the district court in the Bertoli case. Bertoli, 1987 WL 8196, *4. In that case, the court found that an appeal from a bankruptcy preliminary injunction was subject to an immediate appeal. Id. Looking to Sections 158(a), 158(c), and 1292(a)(1), the court concluded that an appeal of an injunction is "an appeal of right and that the court is duty bound to hear and decide the issues presented." Id. See also Carol Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.), Civil Action No. 02-1549: Memorandum Opinion, pp. 1-2 (D. Del. July 16, 2003) (Wolin, J.)[23] ("the court has jurisdiction over this case pursuant to 28 U.S.C. § 1292(a)(1) in the exercise of its jurisdiction over interlocutory orders with respect to injunctions."),[24] vacated by 115 Fed.Appx. 565 (3d Cir. 2004).

---

[23] [Adversary Proc. D.I. 154.]

[24] In Gerard (an appeal originating out of the same bankruptcy adversary proceeding as this appeal, raising similar jurisdictional issues, in which both Grace and the Libby Claimants participated), Grace argued in its brief before this Court that 28 U.S.C. § 1292(a)(1) provided the district court with jurisdiction of appeals concerning bankruptcy court injunctions. Gerard, Civil Action No. 02-1549: Brief of Appellees. The district court agreed. Gerard, Civil Action No. 02-1549: Memorandum Opinion, pp. 1-2.

The Third Circuit is not alone in finding that bankruptcy court injunctions are appealable as of right. The Ninth Circuit Court of Appeals recently held that a bankruptcy court injunction "constitutes an appealable final decision." Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.), 502 F.3d 1086, 1092 (9th Cir. 2007). In Excel Innovations, the Ninth Circuit held:

> The injunction is in effect an extension of the automatic stay, halting another proceeding to avoid disruption of the debtor's reorganization. We have held that a decision granting or denying relief from a § 362(a) automatic stay constitutes a final order for purposes of appellate jurisdiction. Crocker Nat'l Bank v. Am. Mariner Indus., Inc. ( In re Am. Mariner Indus., Inc.), 734 F.2d 426, 429 (9th Cir. 1984), overruled on other grounds by United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). We see no reason to treat the instant injunction differently. See Gruntz v. County of Los Angeles ( In re Gruntz ), 202 F.3d 1074, 1082 (9th Cir. 2000) (en banc) ("The automatic stay is an injunction issuing from the authority of the bankruptcy court."). Moreover, although the parties and the bankruptcy court labeled the injunction "preliminary," nothing in the record indicates that the bankruptcy court contemplated further proceedings on the injunction. See Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 139 B.R. 772, 778 (S.D.N.Y. 1992) ("[W]here the bankruptcy court issues a 'preliminary' injunction, but contemplates no further hearings on the merits of the injunction, apart from the outcome of the reorganization, the injunction is a final, appealable order.").

Id. Thus, without explicitly stating so, the Ninth Circuit determined that 28 U.S.C. § 158(a)(1) governs appeals from bankruptcy court injunctions. The Excel Innovations analysis applies equally to the present appeal: (1) the Preliminary Injunction is nothing more that extension of the automatic stay for Grace's benefit, (2) the Third Circuit has similarly held that a decision granting or denying relief from the automatic stay constitutes a final order for purposes of appellate jurisdiction, see In re Amatex Corp., 755 F.2d 1034 (3d Cir. 1985); In re Comer, 716 F.2d 168 (3d Cir. 1983), and (3) the Bankruptcy Court has no intention to hold any further

proceedings on the Preliminary Injunction as it relates to BNSF.  As in <u>Excel Innovations</u>, the Order is appealable to this Court as of right.

Courts outside of the Third and Ninth Circuits have similarly concluded that bankruptcy court orders regarding injunctions are appealable as of right.  <u>See</u> <u>Official Comm. of Unsecured Creditors of Indust. Ceramics, Inc. v. Indus. Ceramics. Inc.</u>, 252 B.R. 296, 301-02 (W.D.N.Y. 2000) (recognizing that preliminary injunctions issued by bankruptcy court are appealable as of right to district court, but finding that order on appeal was not an injunction); <u>La Habra Products, Inc. v. Patio Indus. (In re Patio Indus.)</u>, 220 B.R. 672, 676 (C.D. Cal. 1996) (granting appeal as of right under section 1292(a)(1) for review of bankruptcy court injunction); <u>Internal Revenue Serv. v. Ernst & Young, Inc. (In re Petition of Ernst & Young, Inc.)</u>, 135 B.R. 517, 520-21 (S.D. Ohio 1991) ("the application of Section 1292(a) to bankruptcy [cases] makes bankruptcy injunctions appealable" as of right); <u>but</u> <u>see</u> <u>In re Quigley Co., Inc.</u>, 323 B.R. 70, 76-77 (S.D.N.Y. 2005).

Any ambiguity in the jurisdictional statutes should be construed to subject bankruptcy court injunctions to no less a degree of appellate review by district courts than district court injunctions are subject to at the hands of the courts of appeals.  Injunctions issued by bankruptcy courts are just as serious as injunctions issued by district courts; both can have irreparable consequences.  Certainly, "[a]s a policy matter, the rulings of a non-Article III bankruptcy court should not be more insulated from appellate review than the rulings of an Article III district court."  <u>Clark v. Sanders (In re Reserve Prod., Inc.)</u> 190 B.R. 287, 290 (E.D. Tex. 1995).  Accordingly, just as the district courts in this Circuit (<u>Prof'l Ins. Mgmt.</u>, <u>Midstate Mortgage</u>, <u>Reliance Acceptance</u>, and <u>Bertoli</u>), the Ninth Circuit in <u>Excel Innovations</u>, and other courts that

have found that bankruptcy court orders regarding injunctions are appealable as of right, this Court should similarly conclude that the Order is appealable as of right.

## II.    If this Court Concludes that the Order is Not Appealable by the Libby Claimants as of Right, Leave to Proceed with an Interlocutory Appeal should be Granted under 28 U.S.C. § 158(a)(3)

If this Court concludes that the Order is not appealable by the Libby Claimants as of right, leave to proceed with an interlocutory appeal should be granted under 28 U.S.C. § 158(a)(3). This Court has jurisdiction to hear appeals of interlocutory orders through exercise of its discretion to grant a party leave to appeal. 28 U.S.C. § 158(a)(3). Since this provision provides no standard to assess whether leave to appeal is appropriate, courts in the Third Circuit have imported the criteria of 28 U.S.C. § 1292(b) – governing appeals of interlocutory orders from district courts – to determine whether to accept an appeal from an interlocutory order of a bankruptcy court. See Official Bondholders Comm. v. Chase Manhattan Bank (In re Marvel Entm't Group, Inc.), 209 B.R. 832, 837 (D. Del. 1997); In re Delaware & Hudson Ry. Co., 96 B.R. 469, 472 (D. Del. 1989). Under 28 U.S.C. § 1292(b), a court will entertain an appeal of an interlocutory order only after the appellant demonstrates that "exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." Delaware & Hudson, 96 B.R. at 473. In addition to the requirement of establishing exceptional circumstance, an interlocutory appeal should be allowed if: "(1) a controlling question of law is involved; (2) the question is one where there is a substantial ground for difference of opinion; and (3) an immediate appeal would materially advance the ultimate termination of the litigation." Marvel Entm't, 209 B.R. at 837.

A.    **Exceptional Circumstances Exist for Granting Leave to Appeal**

There is no shortage of exceptional circumstances in this case for allowing the appeal to proceed immediately. Apart from the fact that the Bankruptcy Court took more than 13 months to rule on Grace's preliminary injunction request – imposing a "temporary stay" during most of that period – the Bankruptcy Court (1) failed to follow long-established Third Circuit precedent for establishing bankruptcy court jurisdiction to enjoin litigation among non-debtor third parties, and (2) wrongly concluded that the requirements for the issuance of a preliminary injunction were established. In reaching both of these erroneous conclusions, the Bankruptcy Court improperly relied upon disputed assertions, allegations, and claims without an evidentiary hearing. Moreover, an appeal from an order granting a preliminary injunction inherently represents an exceptional circumstance and is clearly the policy consideration that allows district court orders to be directly appealable to the court of appeals (see pp. 10-11).

1.    **The Bankruptcy Court Failed to Follow Controlling Third Circuit Precedent**

A Bankruptcy Court decision contrary to well-established law, constitutes cause for review of an interlocutory order under 28 U.S.C. § 158(a)(3). <u>Marvel Entm't</u>, 209 B.R. at 837. In this case, for the same reasons that the Bankruptcy Court ruled in the State Injunction Denial Order that it lacked jurisdiction to enjoin the State Litigation, the Bankruptcy Court lacked jurisdiction to issue the Order enjoining the BNSF Litigation.

The jurisdiction of bankruptcy courts is grounded in and limited by statute. 28 U.S.C. §1334(b); 28 U.S.C. § 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." In turn, Section 157(a) permits the district court to refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the

bankruptcy judges for the district." <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 307 (1995). In the present case, since the claims of the Libby Claimants against BNSF arose neither under the Bankruptcy Code nor in Grace's Chapter 11 case, the sole issue for the Bankruptcy Court was whether those claims are "related to" the Chapter 11 case.

Courts have universally adopted the test first articulated by the Third Circuit in <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984), for determining whether related-to jurisdiction exists:

> A matter is related to the bankruptcy case for §1334 purposes if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . . Moreover, an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and in any way impacts upon the handling and administration of the bankruptcy estate.

Applying this standard, the Third Circuit held that related-to jurisdiction did not extend to personal injury litigation between non-debtor parties, neither of them related to the Chapter 11 debtor, stating:

> At best, [the personal injury lawsuit] is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the [the personal injury lawsuit] would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the [the personal injury lawsuit], it could not be bound by res judicata or collateral estoppel.

<u>Id</u>. at 995. Accordingly, the Third Circuit concluded:

> there would be **no automatic creation of liability** against Manville on account of a judgment against Pacor. Pacor is not a contractual guarantor of Manville, nor has Manville agreed to indemnify Pacor, and thus a judgment in the [the personal injury lawsuit] could not give rise to any automatic liability on the part of the estate. All issues regarding Manville's possible liability would be resolved in the subsequent third party impleader action . . . . There would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim.

Id. at 995-96 (emphasis added).  Since the Chapter 11 debtor could not be bound **automatically**

by the litigation, the litigation could not affect the estate in any way and thus was not related to

the debtor's Chapter 11 case.  Id.

    Pacor has been expressly approved by the United States Supreme Court.  Celotex, 514

U.S. at 308.  And the Third Circuit has confirmed the on-going vitality of Pacor in Combustion

Engineering, 391 F.3d at 225-27, and In re Federal-Mogul Global, Inc., 282 B.R. 301 (D. Del.),

mandamus denied, 300 F.3d 368 (3d Cir. 2002), cert. denied sub nom. Daimler Chrysler Corp. v.

Official Comm. of Asbestos Claimants, 537 U.S. 1148 (2003).

    In Combustion Engineering, a prepackaged Chapter 11 case, the plan provided for all

asbestos claims—including claims against non-debtor affiliates Basic, Inc. and ABB Lummus

Global, Inc.—to be channeled to a post-confirmation trust created under Section 524(g) of the

Bankruptcy Code.  The plan provided for all three entities, along with their respective parent

companies, to make substantial contributions of cash and other assets to the post-confirmation

trust.  Fulfilling a prerequisite to these contributions, the bankruptcy court entered an injunction

under Section 105 barring the assertion of asbestos claims against Basic and Lummus.  After a

thorough analysis of Pacor and Federal-Mogul, the Third Circuit held that related-to jurisdiction

cannot be extended to claims of asbestos plaintiffs against the non-debtors (Basic and Lummus)

simply because of their corporate affiliation with the debtor or because the substantial financial

contributions to the plan by the non-debtor affiliates depended on a channeling injunction in their

favor.  Combustion Engineering, 391 F.3d at 225-27.  Accordingly, the court considered the

other factors advanced by the debtor as grounds for related-to jurisdiction: a unity of interest

based on the debtor's obligations of indemnity or contribution to the non-debtor affiliates, and

the existence of shared insurance between the debtor and the affiliates.

The <u>Combustion Engineering</u> court rejected the debtor's assertion that the non-debtor affiliates' potential rights of contribution or indemnity from the debtor established related-to jurisdiction. <u>Id</u>. at 230-32. In so doing, the court specifically rejected the debtor's contention that common production sites between the debtor and affiliates provided "a sufficient basis for the kind of 'unity of interest' that could give rise to 'related to' jurisdiction." <u>Id</u>. at 232. In the BNSF Litigation, of course, BNSF is not even in the business of producing asbestos products. Rather, liability in BNSF is predicated on BNSF's own negligent conduct in operating its own business on its own property. But even if the fact that BNSF transported Grace's product could be shoe-horned into the concept of a "common production site" between Grace and BNSF, <u>Combustion Engineering</u> makes it crystal clear that this factor does *not* represent a "unity of interest" that could confer jurisdiction. <u>Combustion Engineering</u>, 391 F.3d at 231-32.

This aspect of <u>Combustion Engineering</u> was not new, but simply an application of principles long settled under <u>Pacor</u> and <u>Federal-Mogul</u>. As the court in <u>Combustion Engineering</u> observed, <u>Pacor</u> rejected related-to jurisdiction even though the non-debtor's exposure to liability resulted from sale of products that the debtor manufactured, and <u>Federal-Mogul</u> found no jurisdiction even though the non-debtors' exposure to liability resulted from incorporating the debtor's products into their own. <u>Combustion Engineering</u>, 391 F.3d at 231-32. The court continued:

> In both cases the unity of exposure created by asbestos contained in a common product was insufficient to give rise to "related to" jurisdiction when the third-party claim would not directly result in liability for the debtor.

<u>Id</u>. at 232.

The District Court's decision in <u>Federal-Mogul</u> explains why a claim against a non-debtor who merely asserts a right of contribution or indemnity does not directly result in liability

for the debtor.  In <u>Federal-Mogul</u>, non-debtors Chrysler, Ford and other automakers who were codefendants with the debtors in thousands of asbestos-related tort lawsuits (referred to as the Friction Products Litigation) sought to transfer those cases to the Delaware Bankruptcy Court, arguing that the tort suits were "related to" the debtors' Chapter 11 case so as to confer bankruptcy jurisdiction.   Applying <u>Pacor</u>, District Court held that "related-to bankruptcy jurisdiction [does] not extend to a dispute between non-debtors unless that dispute, by itself, creates at least the logical possibility that the estate will be affected."  <u>Federal-Mogul</u>, 282 B.R. at 309.  The debtor, although a putative indemnitor, had no cause for concern that common facts would be litigated against the non-debtors, because no factual determination could be binding on the debtor's estate.  <u>Id</u>. at 306.  An indemnitor can be bound by an underlying judgment only if given an opportunity to be heard and defend, but since the automatic stay prevents the debtor from being required to defend, the debtor cannot be bound:

> Implicit in <u>Pacor's</u> rationale is that a debtor may not be prejudiced by its failure to defend a lawsuit against a third-party common-law indemnitee without *de facto* depriving the debtor of the benefit of the automatic stay of litigation against it.

<u>Id</u>. at n.3.  Accordingly:

> The Court sees no justification to take the situation of these movants [the non-debtor codefendants of the debtor in asbestos litigation] outside of the rule of <u>Pacor</u>.  **A judgment against them will not bind the debtors.**  No asset of the estate is threatened nor is any re-ordering of creditors in the offing.  It is true that recovery by asbestos claimants against the movants may give rise to claims, indeed very substantial claims, against the debtors in the future.  It is at that time, when the movants appear as creditors of the estate and the facts underlying the liability are adjudicated in the context of the bankruptcy, that the Friction Product Claims will affect the estate.

<u>Id</u>. at 311 (emphasis added).  The District Court's denial of jurisdiction was upheld by the Third Circuit, which concluded:

> Any indemnification claims that the [automakers] might have against Debtors have not yet accrued and would require another lawsuit before they could have an impact on Federal-Mogul's bankruptcy proceeding . . . .

Federal-Mogul, 300 F.3d at 382.

Before Combustion Engineering, it was possible (albeit incorrect) to distinguish Pacor and Federal-Mogul on the basis that those decisions involved attempts to remove litigation to the bankruptcy court, rather than attempts to enjoin such litigation. But in Combustion Engineering, the Third Circuit applied the exact same analysis of related-to jurisdiction to the injunction situation. As the Bankruptcy Court properly recognized in the State Injunction Denial Order, it is now clear that related-to jurisdiction must exist for litigation to be enjoined by the bankruptcy court, just the same as it must exist for litigation to be removed to the bankruptcy court. State Injunction Denial Order at p. 6.

In the State Injunction Denial Order, the Bankruptcy Court correctly determined that Pacor, Federal-Mogul, and Combustion Engineering required the conclusion that the Bankruptcy Court lacked jurisdiction to enjoin the State Litigation. As stated by the Bankruptcy Court:

- While aspects of the §105(a) analysis may be relevant to "related-to" jurisdiction, the two inquiries are analytically distinct. In re Combustion Engineering, Inc., 391 F.3d 190, 224-25 (3d Cir. 2004). Section 105(a) [of the Bankruptcy Code] "does not provide an independent source of federal subject matter jurisdiction." Id. at 225. Therefore, this court must establish subject matter jurisdiction before considering the merits of a §105(a) injunction. State Injunction Denial Order at p. 6.

- [In Federal-Mogul] [t]he bankruptcy court accurately reiterated the holding of Pacor stating that jurisdiction exists where "the potential impact on the debtor's estate would have been direct with no intervening adjudication or joinder of issue necessary for judgment against the non-debtor to affect assets, re-prioritize creditors and thwart the bankruptcy court's administration of the estate." State Injunction Denial Order at p. 8 (citing Federal-Mogul Global, Inc., 282 B.R. at 307).

- The position [of] claims in the [State Litigation] is nearly identical to the claims in Pacor and Federal-Mogul. Before any effect on the Debtors can be

realized, the State of Montana must first be found liable in state court and then pursue its claim for indemnification in bankruptcy court. State Injunction Denial Order at p. 9.

- Montana law prohibits the State of Montana from litigating or establishing a factual basis (i.e. percentage of comparative fault) against Debtors for either contribution or indemnity during the course of the [State Litigation] . . . . A judgment against the State of Montana will not bind Debtors. An intervening adjudication is necessary to affect the estate. State Injunction Denial Order at pp. 9-10.

- In [the State Litigation], it is the actions of the State of Montana, not Debtors, which are the basis of the claims. State Injunction Denial Order at p. 10.

- Here ... however, as in Pacor and Federal-Mogul, the [State Litigation] will not be binding on the estate and will not have a direct impact on the estate without additional intervening adjudication. State Injunction Denial Order at p. 11.

Grounded as it is in controlling Third Circuit precedent, the foregoing analysis is unassailable.

Based on the Bankruptcy Court's reasoning, the Bankruptcy Court lacked subject matter jurisdiction to enjoin the BNSF Litigation just as surely as it lacked jurisdiction to enjoin the State Litigation. Just as the State Litigation concerns the State's own tortious conduct, the BNSF Litigation concerns BNSF's own conduct in operating its railroad. If a state court verdict were to enter against BNSF, BNSF would need to return to the Bankruptcy Court to seek allowance of a claim for indemnity or contribution against Grace—just like Pacor in the Pacor case and just like the State in the State Injunction Denial Order. BNSF itself has acknowledged that the Bankruptcy Court's reasoning in the State Injunction Denial Order is equally applicable to the BNSF Litigation.[25] Absent demonstration by Grace that the BNSF Litigation is distinguishable in any meaningful way from the State Litigation (and from the situation in Pacor and Federal-

---

[25] Motion of BNSF for Leave to File a Reply (I) In Further Support of Its Motion for Clarification of the Scope of the Preliminary Injunction, or In the Alternative, for Relief From the Preliminary Injunction and (II) In Further Opposition to the Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF. [Adversary Proc. D.I. 438, Ex.1, pp. 4-5.]

Mogul), the Order must be reversed as the Bankruptcy Court lacked jurisdiction over the BNSF Litigation.

In the Order, the Bankruptcy Court concluded that subject matter jurisdiction over the BNSF Litigation exists because of (a) BNSF's alleged indemnification or contribution claims and (b) the insurers' alleged indemnification claims, whether related to insurance policies in which BNSF claims to be an additional insured or separate insurance policies purchased by Grace in which BNSF is the sole insured. Contrary to the Bankruptcy Court's analysis, these allegations do not suffice to confer jurisdiction. In order to satisfy the requirements of <u>Pacor</u> and <u>Federal-Mogul</u> for subject matter jurisdiction to exist, Grace would have needed to establish that a judgment against BNSF in the BNSF Litigation would result in automatic liability to Grace pursuant to an indemnity contract. Yet Grace has actually argued to the contrary, and created no evidentiary record whatsoever.

Concerning BNSF's alleged indemnity, Grace states merely that allowing the BNSF Litigation to proceed "could potentially subject the Debtors to additional indemnity claims."[26] Grace admits that BNSF failed to file any claim for indemnification or contribution prior to the bar date (deadline) for filing proofs of claim in this case.[27] While both Grace and BNSF have alleged the existence of various contracts that may give rise to an indemnity obligation, Grace only produced 12 of the alleged 15 agreements. Instead, Grace has attempted to establish by contention rather than by the terms of any agreement that the indemnity provisions allegedly contained therein cover claims against BNSF for the independent torts that are the subject of the BNSF Litigation. Without reviewing the contracts with the BNSF Litigation in mind, it was

---

[26] BNSF Injunction Motion at ¶ 27. Grace later points out that it "does not concede that BNSF has valid contractual indemnification rights" or "common law indemnification rights" against Grace. Indeed, Grace indicates that it does "not believe that BNSF will ultimately be successful in its claims against [Grace] ...."
[27] BNSF Injunction Motion, ¶¶ 18-19.

impossible for the Bankruptcy Court to decide. Perhaps the alleged contracts cannot be read to indemnify BNSF for its own independent torts, especially in light of the rule disfavoring construction of indemnity provisions to cover an indemnitee's own negligence. In United States v. Seckinger, 397 U.S. 203, 211 (1970), the Supreme Court recognized that "a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the various parties. This principle, though variously articulated, is accepted with virtual unanimity among American jurisdictions." Several other courts, including the Court of Appeals for the Third Circuit, have interpreted this rule to require that indemnification for an indemnitee's own negligence must be stated in "unequivocal terms." See Jacobs Constructors v. NPS Energy Servs., 264 F.3d 365, 371 (3d Cir. 2001) (applying Pennsylvania law). Thus, it is apparent that if BNSF were to assert a contractual indemnity claim against Grace, Grace would contest the claim on at least the following grounds: (a) BNSF failed to timely file a proof of claim, (b) the contractual language does not provide for Grace to indemnify BNSF *from BNSF's own conduct*, which is the basis for liability asserted in the BNSF Litigation, and (c) Seckinger requires that indemnity language, if at all ambiguous, be construed not to provide indemnification against the indemnitee's own conduct.

Grace offers no argument to distinguish the instant matter from Pacor, Federal-Mogul, and Combustion Engineering. Indeed, no such distinction exists. The BNSF Litigation is proceeding against BNSF, not Grace. If the Libby Claimants obtain judgment against BNSF, then BNSF may recover from Grace only by successfully proving a claim in Grace's Chapter 11 case. The claims allowance proceeding would be hotly contested on the bases described above; certainly, Grace's liability will not be direct and automatic as required by Pacor and Federal-

Mogul. At most, any BNSF indemnity agreements—if extant at all, and if they were to be properly introduced and received into evidence—would be analogous to the indemnification agreements submitted by Chrysler in the Federal-Mogul case, as to which the District Court stated that "the question whether this purported indemnity agreement would be determined to bind the [debtors] is open and one not easily resolved. The Court is unwilling again to rest subject matter jurisdiction on this tenuous support." Id. at 311 (quoting In re Asbestos Litig., 271 B.R. 118, 124 (S.D. W. Va. 2001)). The District Court concluded: "To the extent that the validity of an indemnity agreement is in doubt, the directness between the third-party action and a judicial ruling that will affect the estate is attenuated." Federal-Mogul, 282 B.R. at 311-12.

Similarly, the insurers' claims of indemnity do not establish related-to jurisdiction. First, no evidence was introduced or received into evidence of any basis for BNSF to assert a claim against any insurer of Grace based on the claims asserted against BNSF in the BNSF Litigation. Second, no evidence was introduced or received into evidence of any agreement whereby Grace agreed to indemnify any insurer for claims asserted by BNSF. Third, Grace admits that BNSF is not covered by any of Grace's insurance policies (including any that were settled pursuant to agreements including a Grace indemnity of the insurer), because, according to Grace, Grace "obtained separate policies for BNSF and BNSF was not named as an additional insured under any of its policies."[28] In a subsequent pleading, however, Grace acknowledges BNSF's claim of the existence of separate policies, but denies being able to "locate any such policies themselves."[29] Accordingly, there is no basis whatsoever to conclude that Grace's insurers have contingent indemnity claims against Grace arising from the BNSF Litigation, let alone that such claims are direct and automatic as required by Pacor and Federal-Mogul. In sum, none of

---

[28] BNSF Injunction Motion, ¶ 36, n.25.
[29] Debtors' Reply in Support of their Motion to Expand the Preliminary Injunction to Include Actions Against BNSF

BNSF's indemnification "avenues" that the Bankruptcy Court considered have any support in the record for concluding that property of the estate could be implicated by the BNSF Litigation. Just as the Bankruptcy Court lacked jurisdiction to enjoin the State Litigation, it lacks jurisdiction to enjoin the BNSF Litigation.

### 2.     The Bankruptcy Court Wrongly Concluded that the Requirements for the Issuance of a Preliminary Injunction were Established

In addition to incorrectly deciding that subject matter jurisdiction exists over the BNSF Litigation, the Bankruptcy Court wrongly concluded that the requirements for the issuance of an injunction were established. In particular, the Bankruptcy Court erroneously found (a) an identity of interest between Grace and BNSF, (b) Grace would be subject to the risk of collateral estoppel and the sub-issue of "record taint" if the BNSF Litigation proceeded, and (c) the harm to Grace outweighed the continued suffering of the Libby Claimants.

In the Order, the Bankruptcy Court found that BNSF and Grace share an identity of interest. But no such identity of interest exists. BNSF itself denies that there is an identity of interest, observing that BNSF is "wholly unrelated to and not an affiliate of the Debtors. The [BNSF Litigation has] been filed against BNSF alleging responsibility resulting from BNSF's activities as opposed to activities of the Debtors."[30] The only ground cited by the Bankruptcy Court for an identity of interest—namely, that BNSF will blame Grace for the Libby Claimants' injuries[31]—establishes the opposite.

As to the issue of collateral estoppel and "record taint," it is clear under Pacor and Federal-Mogul that since even a judgment in a third party action will not bind Grace, a fortiori, there can be no collateral estoppel, and certainly no "record taint" with any effect on Grace. It is

---

[Adversary Proc. D.I. 424, p.6, n.16.]
[30] See Response of BNSF to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF ¶ 6 [Adversary Proc. D.I. 413].

worth recalling in Pacor, where the third party litigation consisted of a personal injury lawsuit brought against a distributor of Johns-Manville asbestos, the Third Circuit determined that the lawsuit could have "no conceivable effect" on the Johns-Manville bankruptcy estate even though the same purported threat of "record taint" as the Bankruptcy Court cited in the Order existed against Johns-Manville.[32]   In addition, *as explained by the Bankruptcy Court itself in the State Injunction Denial Order*,[33] in this case the law of Montana fully protects Grace from any "record taint" or collateral estoppel effect of the BNSF Litigation.   Plumb v. Fourth Judicial Dist. Court, 927 P.2d 1011 (Mont. 1996), holds that entry of findings against an empty chair non-party violates substantiative due process. Mont. Code Ann. Section 27-1-703(c)(ii), provides that there may be no comparison of fault upon a party beyond the jurisdiction of the court.   Similarly, Faulconbridge v. State, 142 P.2d 777, 792 (Mont. 2006), holds that there may be no evidence of comparative causation against an empty chair non-party.

In addition to lacking a legal basis, the Bankruptcy Court's determination of the danger of record taint was not supported by the record.  Grace introduced no evidence that record taint is a danger.   Indeed, no further record taint upon Grace is possible with regard to the Libby situation.   In 1999, a jury awarded punitive damages against Grace for what it did in Libby. Grace appealed and lost.  Finstad v. W.R. Grace & Co., 8 P.3d 778 (Mont. 2000).  The proof met Montana's high standard for punitive damages, that Grace's actions were intentional, reckless and/or malicious, within the meaning of Mont. Code Ann. Section 27-1-221.  On the record in Finstad, the jury was entitled to find that Grace had lied to the workers, lied to the union, lied to

---

[31] Order at pp. 21-22.

[32] Indeed, the first reported decision cited by Grace concerning record taint grew out of the Johns-Manville bankruptcy. Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.), 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983).

[33] State Injunction Denial Order at pp. 9-10.

local doctors, and obstructed medical studies; and that Grace chose not to protect the workers, their families and the community, or even to disclose the asbestos hazard to them. Given this record, it is difficult to see how any further "record taint" against Grace could be possible.

With respect to the balancing of harms, the Bankruptcy Court acknowledges but never answers the Libby Claimants' assertion that they are severely harmed by the BNSF Injunction because "it allows sick and dying claimants to continue to suffer without compensation." In a shocking non-sequitur, the Bankruptcy Court explains that she permitted the parties to propose a procedure to preserve testimony under Fed. R. Civ. P. 27(c)—without adding that she denied the Libby Claimants' motion to take preservation depositions, imposing the impossible requirement of obtaining a doctor's certification that the victim would die within six months, ignoring the Libby Claimants' pleas that the slow strangulation caused by asbestos disease does not permit a medical prediction that death will occur within a given six-month period and that an end-stage asbestos victim who is struggling for each breath may be too ill to testify.[34] The Bankruptcy Court's disregard for the suffering of the Libby Claimants constitutes, in the context of the Order, legal error in applying the balancing of harms standard for issuance of an injunction.

In sum, the Bankruptcy Court's failure to apply Third Circuit precedent concerning subject matter jurisdiction to enjoin third-party litigation, especially when viewed in combination with the other errors committed by the Bankruptcy Court including failure to require any evidentiary support for the injunction sought by Grace and failure to consider the suffering of the Libby Claimants, establish exceptional circumstances that should impel this Court to grant leave for the Libby Claimants to appeal from the Order.

---

[34] Transcript of 8/23/04 Hearing D.I. 6266, Adversary Proc. D.I. 266, 267, and 268.

**B.    The Appeal Involves a Controlling Question of Law for Which
There is Substantial Grounds for Difference of Opinion**

An order involves a controlling question of law "'if, on appeal, a determination that the decision contained error would lead to reversal.'"  Patrick v. Dell Financial Services, Inc., 366 B.R. 378, 385 (M.D. Pa. 2007) (quoting In re Sandenhill, Inc., 304 B.R. 692, 694 (E.D. Pa. 2004)).  "'[C]ontrolling means serious to the conduct of the litigation, either practically or legally.'"  Bradburn Parent Teacher Store, Inc. v. 3M, 2005 WL 1819969, at *3 (E.D. Pa. 2005) (quoting Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974)).

There is little doubt that the erroneous exercise of subject matter jurisdiction or improper issuance of an injunction involves a controlling question of law.  See Patrick, 366 B.R. at 386 ("Whether a court has jurisdiction speaks directly to its power to adjudicate a particular claim.").  If this Court decides that subject matter jurisdiction does not exist or that the standard for issuance of an injunction has not been met, the Order will be reversed.  Given that the Order is contrary to long-established Third Circuit precedent and inconsistent with the Bankruptcy Court's own State Injunction Denial Order, there is substantial ground for a difference of opinion from the Bankruptcy Court's holding in the Order.

**C.    Granting Leave to Appeal Will Materially Advance the Ultimate
Termination of the Litigation**

An immediate appeal of this issue will advance the termination of the BNSF Litigation by permitting the lawsuits to reach trial or settlement without further interruption.  Conversely, not permitting the appeal will only further the delay the termination of the BNSF Litigation.  The adversary proceeding in which Grace has obtained the Preliminary Injunction will terminate on the effective date of any confirmed Chapter 11 plan, to be replaced by the discharge injunction under Section 1141(d) protecting the reorganized debtor and by any injunctions protecting third

parties that are permitted under Section 524(g) of the Bankruptcy Code. Section 524(g) does not permit an injunction against the BNSF Litigation. 11 U.S.C. § 524(g)(4)(ii). It is indisputable (and Grace does not argue otherwise) that the Libby Claimants cannot be barred from pursuing the BNSF Litigation once Grace's plan takes effect. There is no legitimate interest in delaying the inevitable BNSF Litigation.

<b><u>Conclusion</u></b>

For the foregoing reasons, if this Court should conclude that the Order is not appealable to this Court as of right (and, in any event, as an alternative to a determination that the Order is appealable as of right), this Court should enter an order granting the Libby Claimants leave to appeal pursuant to 28 U.S.C. § 158(a)(3).

Dated: April 24, 2008

LANDIS RATH & COBB LLP

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Daniel C. Cohn
Christopher M. Candon
COHN WHITESELL & GOLDBERG LLP
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679

*Counsel for the Libby Claimants*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

## APPEAL TRANSMITTAL SHEET

Case Number: _____    ○ BK    ○ AP

    If AP, related BK Case Number: _____

Title of Order Appealed:

_____

      Docket Number: _____    Date Entered: _____

Item Transmitted:  ○ Notice of Appeal          ○ Motion for Leave to Appeal
                ○ Amended Notice of Appeal   ○ Cross Appeal
             Docket Number: _____   Date Filed: _____

*Appellant/Cross Appellant:                *Appellee/Cross Appellee

_____        _____

Counsel for Appellant:                     Counsel for Appellee:

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

*If additional room is needed, please attach a separate sheet.

Filing Fee paid?    ○ Yes   ○ No

IFP Motion Filed by Appellant?   ○ Yes   ○ No

Have Additional Appeals to the Same Order been Filed?  ○ Yes   ○ No
    If so, has District Court assigned a Civil Action Number?   ○ Yes  ○ No   Civil Action # _____

Additional  Notes:

_____

_____          By: _____
Date                                         Deputy Clerk

_____

                                   FOR USE BY U.S. BANKRUPTCY COURT

Bankruptcy Court Appeal (BAP) Number: _____
7/6/06

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |
| | |
| W.R. GRACE & CO., *et al.*, | |
| Plaintiffs, | Adversary No. A-01-771 |
| v. | |
| MARGARET CHAKARIAN, *et al.*, and JOHN DOES 1-1000, | |
| Defendants. | |

### AFFIDAVIT OF SERVICE

STATE OF DELAWARE    )
                     ) SS
NEW CASTLE COUNTY    )

       Linda M. Rogers, being duly sworn according to law, deposes and says that she is employed by the law firm of Landis Rath & Cobb LLP, attorneys for the Libby Claimants in the above-referenced cases, and on the 24th day of April, 2008, she caused a copy of the following:

MOTION OF LIBBY CLAIMANTS FOR LEAVE TO
APPEAL ORDER ENJOINING ACTIONS AGAINST BNSF

to be served upon the parties on the attached list via first class mail or in the manner as indicated.

_____
Linda M. Rogers

SWORN TO AND SUBSCRIBED before me this 24th day of April, 2008.

_____
Notary Public

CATHY A. ADAMS
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires March 5, 2010

393.001-20192.DOC

**W.R. Grace & Co.,** *et al.* **v. Margaret Chakarian,** *et al.,*
**and John Does 1-1000**

**Adv. Pro. No. 01-771**
<u>**Service List**</u>

Mark Shelnitz
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044
(Debtors and Debtors in Possession)

David M. Bernick, P.C.
Janet S. Baer, Esq.
Lori Sinanyan, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
(Counsel to W.R. Grace & Co., *et al.*)

**HAND DELIVERY**
Laura Davis Jones, Esq.
James E. O'Neill, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899
(Counsel to Debtors and Debtors in Possession)

Lewis Kruger, Esq.
Kenneth Pasquale, Esq.
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
(Counsel to Official Committee of Unsecured Creditors)

**HAND DELIVERY**
Michael R. Lastowski, Esq.
Richard W. Riley, Esq.
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
(Counsel to Official Committee of Unsecured Creditors)

**HAND DELIVERY**
Michael B. Joseph, Esq.
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
(Counsel to Official Committee of Asbestos Property
Damage Claimants)

Scott L. Baena, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
(Counsel to Official Committee of Asbestos Property
Damage Claimants)

**HAND DELIVERY**
Marla Rosoff Eskin, Esq.
Mark T. Hurford, Esq.
Campbell & Levine, LLC
800 North King Street, Suite 300
Wilmington, DE 19801
(Counsel to the Official Committee of Asbestos Personal
Injury Claimants)

Peter Van N. Lockwood, Esq.
Nathan D. Finch, Esq.
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005
(Counsel to the Official Committee of Asbestos Personal
Injury Claimants)

Elihu Inselbuch, Esq.
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
(Counsel to the Official Committee of Asbestos Personal
Injury Claimants)

**HAND DELIVERY**
Frank J. Perch, Esq.
Office of the United States Trustee
844 King Street
Suite 2311
Wilmington, DE 19801
(United States Trustee)

**HAND DELIVERY**
Teresa K.D. Currier, Esq.
Buchanan Ingersoll & Rooney PC
1000 West Street, Suite 1410
Wilmington, DE 19801
(Counsel to Equity Committee)

Philip Bentley, Esq.
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(Counsel to Equity Committee)

John C. Phillips, Jr., Esq.
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806
(Counsel to David T. Austern, Future Claimants'
Representative)

Richard H. Wyron, Esq.
Orrick, Herrington & Sutcliffe, LLP
3050 K Street, NW
Suite 300
Washington, DC 20007
(Counsel to David T. Austern, Future Claimants'
Representative)

**HAND DELIVERY**
Edward B. Rosenthal, Esq.
Rosenthal, Monhait, & Goddess, P.A.
919 Market Street
Mellon Bank Center, Suite 1401
Wilmington, DE 19801
(Counsel to Continental Casualty Company)

Brian H. Mukherjee, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
(Counsel to CNA Financial Corporation)

Elizabeth DeCristofaro, Esq.
Ford Marrin Esposito Witmeyer & Gleser, L.L.P.
Wall Street Plaza, 23rd Floor
New York, NY 10005-1875
(Counsel to Continental Casualty Company)

**HAND DELIVERY**
Ian Connor Bifferato, Esq.
Garvan F. McDaniel, Esq.
Chad J. Toms, Esq.
Bifferato Gentilotti LLC
800 North King Street, First Floor
Wilmington, DE 19801
(Counsel to Royal Indemnity Company)

Carl J. Pernicone, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, NY  10017-5639
(Counsel to Royal Indemnity Company)

Daniel C. Cohn, Esq.
Cohn Whitesell & Goldberg LLP
101 Arch Street
Boston, MA  02110
(Counsel to Libby Plaintiffs)

**HAND DELIVERY**
Evelyn J. Meltzer, Esq.
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
PO Box 1709
Wilmington, DE 19899-1709
(Counsel to BNSF Railway Company)

Edward C. Toole, Jr., Esq.
Anne Marie Aaronson, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(Counsel to BNSF Railway Company)

**HAND DELIVERY**
Mark J. Phillips, Esq.
Jeffrey C. Wisler, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
(Counsel to Maryland Casualty Company)

Edward J. Longosz, II, Esq.
Laura G. Stover, Esq.
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Avenue, N.W., Suite 1200
Washington, DC  20006
(Counsel to Maryland Casualty Company)

**HAND DELIVERY**
Steven M. Yoder, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(Counsel to DIP Lender)

J. Douglas Bacon, Esq.
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(Counsel to DIP Lender)

David S. Rosenbloom, Esq.
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL  60606-5096
(Counsel to National Medical Care, Inc.)

**HAND DELIVERY**
David E. Wilks, Esq.
Buchanan Ingersoll PC
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, DE  19801
(Counsel to Gamma Holding, NV)

**HAND DELIVERY**
Kathleen M. Miller, Esq.
Smith, Katzenstein & Furlow LLP
The Corporate Plaza
800 Delaware Avenue
Wilmington, DE  19801
(Counsel to the Allen Plaintiffs)

Gary Smolker
Alice Smolker
4720 Lincoln Blvd., Suite 280
Marina del Rey, CA  90292-6977

**HAND DELIVERY**
Steven K. Kortanek, Esq.
Klehr Harrison Harvey Branzburg & Ellers LLP
919 Market St., Suite 1000
Wilmington, DE  19801
(Counsel to Carol Gerard)

Brian Parker, Esq.
36 South Charles Street
Charles Center South
Suite 2200
Baltimore, MD  21201
(Counsel to Carol Gerard)

**HAND DELIVERY**
Thomas D. Walsh, Esq.
McCarter & English, LLP
919 Market St., Suite 1800
Wilmington, DE  19801
(Counsel to James and Julie Holland)

Michael S. Etkin, Esq.
Lowenstein Sandler P.C.
65 Livingston Avenue
Roseland, NJ  07068
(Counsel to Keri Evans)

David K. Foust, Esq.
3030 W. Grand Boulevard
10th Floor – Suite 200
Detroit, MI  48202
(Counsel to the State of Michigan, Department of Corrections)

**HAND DELIVERY**
Francis A. Monaco, Jr., Esq.
Kevin J. Mangan, Esq.
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Ste. 1501
Wilmington, DE  19801
(Counsel to the State of Montana)

**HAND DELIVERY**
Mark D. Collins, Esq.
Deborah E. Spivack, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE 19899
(Counsel to The Chase Manhattan Bank)

**HAND DELIVERY**
Bernard G. Conaway, Esq.
Fox Rothschild LLP
919 Market Street, Suite 1300
Wilmington, DE  19801
(Counsel to the Lanier Law Firm Asbestos Claimants)

**<u>HAND DELIVERY</u>**
Daniel B. Butz, Esq.
Gregory T. Donilon, Esq.
William H. Sudell, Jr., Esq.
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(Counsel to The Scotts Co.)

Robert J. Sidman, Esq.
Tiffany Strelow Cobb, Esq.
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216
(Counsel to The Scotts Co.)

**<u>HAND DELIVERY</u>**
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite1200
Wilmington, DE 19801
(Counsel to ExxonMobile)

**<u>HAND DELIVERY</u>**
Ellen W. Slights
Assistant U.S. Attorney
The Nemours Building
1007 Orange Street, Suite 700
Wilmington, DE 19801

Dale R. Cockrell, Esq.
Christensen, Moore, Cockrell, Cummings & Axelberg, P.C.
P.O. Box 7370
Kalispell, MT 59904
(Counsel to the State of Montana)