## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |
| W.R. GRACE & CO., *et al.*, | |
| Plaintiffs, | Adversary No. A-01-771 |
| v. | |
| MARGARET CHAKARIAN, *et al.*, and JOHN DOES 1-1000, | |
| Defendants. | Ref. No. 498 |

### NOTICE OF APPEAL

Claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] pursuant to 28 U.S.C. § 158(a)(1) or 28 U.S.C. § 1292(a)(1), or, alternatively, with leave of the District Court, 28 U.S.C. § 158(a)(3),[2] and in accordance with Fed. R. Bankr. P. 8002, and Del. Bankr. L.R. 8001-1, hereby appeal from the Memorandum Opinion and Order Expanding the Preliminary Injunction to Include Actions Against Burlington Northern and Sante Fe Railroad, by the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, entered on April 14, 2008 [Docket No. 498] (the "Order").

---

[1] As identified in the Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Main Case Docket No. 17337] filed in this case, as it may be amended and restated from time to time.

[2] The Libby Claimants assert that the Order (defined herein) is appealable as of right pursuant to 28 U.S.C. § 158(a)(1) or 28 U.S.C. § 1292(a)(1). If the District Court concludes that the Order is not appealable by the Libby Claimants pursuant to 28 U.S.C. § 158(a)(1) or 28 U.S.C. § 1292(a)(1), leave to proceed with an interlocutory appeal under 28 U.S.C. § 158(a)(3) is appropriate. Contemporaneously herewith, the Libby Claimants have filed a Motion for Leave to Appeal supporting the appeal of the Order on this alternative basis.

The names of all parties to the Order appealed from and the names, addresses, and telephone numbers of their respective attorneys are listed below. A copy of the Order is attached hereto.

| **Party** | **Counsel of Record** |
|---|---|
| W.R. Grace & Co. | David M. Bernick, Esq.<br>Janet S. Baer, Esq.<br>KIRKLAND & ELLIS LLP<br>200 East Randolph Drive<br>Chicago, Illinois 60601<br>(312) 861-2000 |
| | Laura Davis Jones, Esq.<br>James E. O'Neill, Esq.<br>PACHULSKI STANG ZIEHL YOUNG<br>JONES & WEINTRAUB<br>919 North Market Street, 16th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19899<br>(302) 652-4100 |
| State of Montana | Francis A. Monaco, Jr., Esq.<br>Kevin J. Mangan, Esq.<br>WOMBLE CARLYLE SANDRIDGE &<br>RICE, PLLC<br>222 Delaware Avenue, Suite 1501<br>Wilmington, DE 19801<br>(302) 252-4361 |
| BNSF Railway Company | Evelyn J. Meltzer, Esq.<br>PEPPER HAMILTON LLP<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>(302) 777-6500 |

393.001-20185.doc

Edward C. Toole, Jr., Esq.
Anne Marie Aaronson, Esq.
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000

Official Committee of Asbestos Personal
Injury Claimants

Marla Rosoff Eskin, Esq.
Mark T. Hurford, Esq.
CAMPBELL & LEVINE, LLC
800 King Street, 3rd Floor
Wilmington, DE 19801
(302) 426-1900

Elihu Inselbuch, Esq.
CAPLIN & DRYSDALE, CHARTERED
399 Park Avenue, 27th Floor
New York, NY 10022
(212) 319-7125

Peter Van N. Lockwood, Esq.
Nathan D. Finch, Esq.
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, D.C. 20005
(202) 862-5000

Dated: April 24, 2008

LANDIS RATH & COBB LLP

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Daniel C. Cohn
Christopher M. Candon
COHN WHITESELL & GOLDBERG LLP
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2505
Facsimile:  (617) 951-0679

*Counsel for the Libby Claimants*

4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |

| | |
|---|---|
| W.R. GRACE & CO., *et al.*, | |
| Plaintiffs, | Adversary No. A-01-771 |
| v. | |
| MARGARET CHAKARIAN, *et al.*, and JOHN DOES 1-1000, | |
| Defendants. | |

### AFFIDAVIT OF SERVICE

STATE OF DELAWARE    )
                           ) SS
NEW CASTLE COUNTY   )

       Linda M. Rogers, being duly sworn according to law, deposes and says that she is employed by the law firm of Landis Rath & Cobb LLP, attorneys for the Libby Claimants in the above-referenced cases, and on the 24th day of April, 2008, she caused a copy of the following:

### NOTICE OF APPEAL

to be served upon the parties on the attached list via first class mail or in the manner as indicated.

*(signature)*
Linda M. Rogers

SWORN TO AND SUBSCRIBED before me this 24th day of April, 2008.

*(signature)*
Notary Public

CATHY A. ADAMS
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires March 5, 2010

393.001-20191.DOC

**W.R. Grace & Co.,** *et al.* **v. Margaret Chakarian,** *et al.,*
**and John Does 1-1000**

**Adv. Pro. No. 01-771**
**Service List**

Mark Shelnitz
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044
(Debtors and Debtors in Possession)

David M. Bernick, P.C.
Janet S. Baer, Esq.
Lori Sinanyan, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
(Counsel to W.R. Grace & Co., *et al.*)

**HAND DELIVERY**
Laura Davis Jones, Esq.
James E. O'Neill, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899
(Counsel to Debtors and Debtors in Possession)

Lewis Kruger, Esq.
Kenneth Pasquale, Esq.
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
(Counsel to Official Committee of Unsecured Creditors)

**HAND DELIVERY**
Michael R. Lastowski, Esq.
Richard W. Riley, Esq.
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
(Counsel to Official Committee of Unsecured Creditors)

**HAND DELIVERY**
Michael B. Joseph, Esq.
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
(Counsel to Official Committee of Asbestos Property
Damage Claimants)

Scott L. Baena, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
(Counsel to Official Committee of Asbestos Property
Damage Claimants)

**HAND DELIVERY**
Marla Rosoff Eskin, Esq.
Mark T. Hurford, Esq.
Campbell & Levine, LLC
800 North King Street, Suite 300
Wilmington, DE 19801
(Counsel to the Official Committee of Asbestos Personal
Injury Claimants)

Peter Van N. Lockwood, Esq.
Nathan D. Finch, Esq.
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005
(Counsel to the Official Committee of Asbestos Personal
Injury Claimants)

Elihu Inselbuch, Esq.
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
(Counsel to the Official Committee of Asbestos Personal
Injury Claimants)

**HAND DELIVERY**
Frank J. Perch, Esq.
Office of the United States Trustee
844 King Street
Suite 2311
Wilmington, DE 19801
(United States Trustee)

**HAND DELIVERY**
Teresa K.D. Currier, Esq.
Buchanan Ingersoll & Rooney PC
1000 West Street, Suite 1410
Wilmington, DE 19801
(Counsel to Equity Committee)

Philip Bentley, Esq.
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(Counsel to Equity Committee)

John C. Phillips, Jr., Esq.
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE  19806
(Counsel to David T. Austern, Future Claimants'
Representative)

Richard H. Wyron, Esq.
Orrick, Herrington & Sutcliffe, LLP
3050 K Street, NW
Suite 300
Washington, DC  20007
(Counsel to David T. Austern, Future Claimants'
Representative)

**HAND DELIVERY**
Edward B. Rosenthal, Esq.
Rosenthal, Monhait, & Goddess, P.A.
919 Market Street
Mellon Bank Center, Suite 1401
Wilmington, DE  19801
(Counsel to Continental Casualty Company)

Brian H. Mukherjee, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA  02109
(Counsel to CNA Financial Corporation)

Elizabeth DeCristofaro, Esq.
Ford Marrin Esposito Witmeyer & Gleser, L.L.P.
Wall Street Plaza, 23rd Floor
New York, NY  10005-1875
(Counsel to Continental Casualty Company)

**HAND DELIVERY**
Ian Connor Bifferato, Esq.
Garvan F. McDaniel, Esq.
Chad J. Toms, Esq.
Bifferato Gentilotti LLC
800 North King Street, First Floor
Wilmington, DE  19801
(Counsel to Royal Indemnity Company)

Carl J. Pernicone, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639
(Counsel to Royal Indemnity Company)

Daniel C. Cohn, Esq.
Cohn Whitesell & Goldberg LLP
101 Arch Street
Boston, MA 02110
(Counsel to Libby Plaintiffs)

**HAND DELIVERY**
Evelyn J. Meltzer, Esq.
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
PO Box 1709
Wilmington, DE 19899-1709
(Counsel to BNSF Railway Company)

Edward C. Toole, Jr., Esq.
Anne Marie Aaronson, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(Counsel to BNSF Railway Company)

**HAND DELIVERY**
Mark J. Phillips, Esq.
Jeffrey C. Wisler, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(Counsel to Maryland Casualty Company)

Edward J. Longosz, II, Esq.
Laura G. Stover, Esq.
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Avenue, N.W., Suite 1200
Washington, DC 20006
(Counsel to Maryland Casualty Company)

**HAND DELIVERY**
Steven M. Yoder, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(Counsel to DIP Lender)

J. Douglas Bacon, Esq.
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(Counsel to DIP Lender)

David S. Rosenbloom, Esq.
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL 60606-5096
(Counsel to National Medical Care, Inc.)

**HAND DELIVERY**
David E. Wilks, Esq.
Buchanan Ingersoll PC
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, DE 19801
(Counsel to Gamma Holding, NV)

**HAND DELIVERY**
Kathleen M. Miller, Esq.
Smith, Katzenstein & Furlow LLP
The Corporate Plaza
800 Delaware Avenue
Wilmington, DE  19801
(Counsel to the Allen Plaintiffs)

Gary Smolker
Alice Smolker
4720 Lincoln Blvd., Suite 280
Marina del Rey, CA  90292-6977

**HAND DELIVERY**
Steven K. Kortanek, Esq.
Klehr Harrison Harvey Branzburg & Ellers LLP
919 Market St., Suite 1000
Wilmington, DE  19801
(Counsel to Carol Gerard)

Brian Parker, Esq.
36 South Charles Street
Charles Center South
Suite 2200
Baltimore, MD  21201
(Counsel to Carol Gerard)

**HAND DELIVERY**
Thomas D. Walsh, Esq.
McCarter & English, LLP
919 Market St., Suite 1800
Wilmington, DE  19801
(Counsel to James and Julie Holland)

Michael S. Etkin, Esq.
Lowenstein Sandler P.C.
65 Livingston Avenue
Roseland, NJ  07068
(Counsel to Keri Evans)

David K. Foust, Esq.
3030 W. Grand Boulevard
10th Floor – Suite 200
Detroit, MI  48202
(Counsel to the State of Michigan, Department of
Corrections)

**HAND DELIVERY**
Francis A. Monaco, Jr., Esq.
Kevin J. Mangan, Esq.
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Ste. 1501
Wilmington, DE  19801
(Counsel to the State of Montana)

**HAND DELIVERY**
Mark D. Collins, Esq.
Deborah E. Spivack, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE 19899
(Counsel to The Chase Manhattan Bank)

**HAND DELIVERY**
Bernard G. Conaway, Esq.
Fox Rothschild LLP
919 Market Street, Suite 1300
Wilmington, DE  19801
(Counsel to the Lanier Law Firm Asbestos Claimants)

**<u>HAND DELIVERY</u>**
Daniel B. Butz, Esq.
Gregory T. Donilon, Esq.
William H. Sudell, Jr., Esq.
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(Counsel to The Scotts Co.)

Robert J. Sidman, Esq.
Tiffany Strelow Cobb, Esq.
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216
(Counsel to The Scotts Co.)

**<u>HAND DELIVERY</u>**
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite1200
Wilmington, DE 19801
(Counsel to ExxonMobile)

**<u>HAND DELIVERY</u>**
Ellen W. Slights
Assistant U.S. Attorney
The Nemours Building
1007 Orange Street, Suite 700
Wilmington, DE 19801

Dale R. Cockrell, Esq.
Christensen, Moore, Cockrell, Cummings & Axelberg, P.C.
P.O. Box 7370
Kalispell, MT 59904
(Counsel to the State of Montana)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE:  ( | |
| ( | |
| W.R. GRACE & CO., <u>et al.</u>,  ( | Bankruptcy No. 01-01139 (JKF) |
| ( | Jointly Administered |
| Debtor(s).  ( | |
| ( | Chapter 11 |
| ( | |
| ( | |
| W.R. GRACE & CO., et al.,  ( | |
| ( | |
| Plaintiffs.  ( | |
| ( | |
| -against-  ( | |
| ( | Adversary No. A-01-771 |
| MARGARET CHAKARIAN, *et al.*,  ( | |
| AND JOHN DOES 1-1000,  ( | Related to Doc. No. 398, Motion for Preliminary |
| ( | Injunction to Include Actions Against BNSF[1] |
| Defendants.  ( | |

MEMORANDUM OPINION[2]

The matter before the Court is the Debtors' Motion to Expand the Preliminary Injunction

to Include Actions Against Burlington Northern and Sante Fe Railroad ("BNSF") (the

"Expansion Motion"),[3] which seeks to expand the relief granted by the preliminary injunction

---

[1] The actual document is entitled "Debtors' Motion to Expand the Preliminary Injunction
to Include Actions Against BNSF."

[2] The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our
findings of fact and conclusions of law.

[3] Doc. No. 398.

DKT. NO. 498
DT. FILED 4/4/08

(the "Injunction") to specifically include actions against Burlington Northern and Sante Fe

Railroad ("BNSF") for exposure of some kind to the Debtors' former vermiculite mining

operations in Libby, Montana (the "Montana Actions").

Debtors filed the Expansion Motion in response to the Motion of BNSF for Clarification

of the Scope of the Preliminary Injunction, or in the Alternative, for Relief from the Preliminary

Injunction ("BNSF Motion").[4]  BNSF filed a response to the Expansion Motion requesting that

---

[4] BNSF's motion is at Doc. No. 389.  BNSF moved "(a) For a determination that the preliminary injunction does not preclude discovery of the existence of asbestos-related liability insurance coverage with the Insurance Carriers, where BNSF is the named insured on policies purchased by the Debtors for BNSF's benefit, or where BNSF is named as an additional insured on policies which also accord coverage to the Debtors; (b) In the alternative, for relief from the preliminary injunction to proceed with such discovery; and (c) for such other and further relief as is appropriate."  Doc. No. 389 at 2-3.  Responses were filed by the Libby Claimants (Libby Claimants' Statement concerning Motion of BNSF Concerning Preliminary Injunction, Doc. No. 390); Continental Casualty Company (Objection of Continental Casualty Company to Motion of BNSF For Clarification of the Scope of the Preliminary Injunction, or in the Alternative, For Relief From the Preliminary Injunction, Doc. No. 391); Royal Indemnity Company (Royal Indemnity Company's Opposition to Motion of BNSF for Clarification of the Scope of the Preliminary Injunction, or in the Alternative, for Relief From the Preliminary Injunction, Doc. No. 392); Maryland Casualty Company (Objection of Maryland Casualty Company to the Motion of BNSF for Clarification of the Scope of the Preliminary Injunction, or in the Alternative, for Relief from the Preliminary Injunction, Doc. No. 393); and Debtors (Debtors' Response to Motion of BNSF for Clarification of the Scope of the Preliminary Injunction and Cross Motion to Expand the Preliminary Injunction to Include Actions Against BNSF, Doc. No. 394).  Royal Indemnity filed a Response to Debtors' Response to Motion of BNSF For Clarification of the Scope of the Preliminary Injunction and Cross Motion to Expand the Preliminary Injunction to Include Actions Against BNSF, Doc. No. 397.  The court heard the BNSF Motion on April 2, 2007, and deferred it until May 2, 2007, pending a hearing on the Expansion Motion, Doc. No. 398.  On June 11, 2007, this court entered an order granting the BNSF Motion to the following extent: "BNSF may seek discovery of independent asbestos-related insurance coverage policies that are NOT: (i) policies that are property of the estates of the above-captioned debtors ("Debtors"); (ii) policies where any of the Debtors are insured; or (iii) polices where any of the Debtors have a claim to their proceeds."  Doc. No. 457.  The June 11, 2007, Order addressed the BNSF Motion, but did not address Debtors' Cross Motion, Doc. No. 394.  A separate order regarding the Debtors' Cross Motion was entered at Doc. No. 396.  That order provided that a response to a motion could not include a request for affirmative relief
(continued...)

the court deny the motion based on the argument that injunctive relief under §105 of the

Bankruptcy Code is improper.[5]  The Official Committee of Asbestos Personal-Injury Claimants

("ACC") and the "[c]laimants injured by exposure to asbestos from Grace's operations in and

near Libby, Montana" (the "Libby Claimants") also filed opposition to the Expansion Motion

arguing that the court lacks subject matter jurisdiction over the Montana Actions and that

injunctive relief under §105 is not warranted.[6]   Debtors filed a reply in support of their

Expansion Motion.[7]  Maryland Casualty Company ("MMC"), one of debtors' insurers, also filed

a reply in support of the Expansion Motion.[8]  The relevant history of this case is as follows.

On April 2, 2001 (the "Petition Date"), Debtors filed a voluntary petition for relief under

Chapter 11 of the United States Bankruptcy Code.  Soon after, the United States Trustee

---

[4](...continued)
and that a separate motion was required.  The Expansion Motion, Doc. No. 398, was filed as a result of the order at Doc. No. 396 and is addressed herein.

[5] Response of BNSF to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF, Doc. No. 413.

[6] Opposition of the Official Committee of Asbestos Personal-Injury Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF, Doc. No. 414; Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF, Doc. No. 417, at 1 (referring at n.1 to the "Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed.R.Bankr.P. 2019 filed in Case No. 01-01139, Doc. No. 13940, as it may be amended and restated from time to time).

[7] Debtors' Reply in Support of Their Motion to Expand the Preliminary Injunction to Include Actions Against BNSF, Doc. No. 432.  Debtors filed Motion for Leave to File a Reply in Further Support of Their Motion to Expand Preliminary Injunction to Include Actions Against BNSF, Doc. No. 424, and the court entered an Order Granting that motion at Doc. No. 431.

[8] "[I]ncorporating the law of this case as established by this Court and the U.S. Court of Appeals for the Third Circuit in this Adversary Proceeding, and the arguments and authorities set forth in the Expansion Motion."  Doc. No. 422.

appointed the Property Damage Committee, the Official Committee of Asbestos Personal Injury

Claimants, the Official Committee of Unsecured Creditors, and the Official Committee of Equity

Holders. Debtors continue in possession of their property and the management of their

businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The preliminary injunction was obtained as follows: on the first day of Debtors' chapter

11 cases, April 2, 2001, the Debtors obtained a temporary restraining order[9] against actions being

pursued against their nondebtor affiliates and certain third parties that arise from alleged

exposure to vermiculite ore indirectly or directly caused by the Debtors. A preliminary

injunction was entered on April 25, 2001,[10] pending a hearing on May 3, 2001.

The preliminary injunction at issue in this proceeding was issued on May 3, 2001,[11]

barring the prosecution of currently pending actions against various affiliated entities and third

parties whose purported liability was solely derivative of W.R. Grace. After May 3, 2001, the

preliminary injunction was extended.[12] On January 22, 2002, the court entered an order

modifying the preliminary injunction to include certain additional affiliates and to reinstate the

bar against the commencement of new actions against affiliates arising from alleged exposure to

asbestos whether indirectly or directly cause by W.R. Grace.[13] On February 4, 2002, Carol

Gerard, a former resident of Libby, Montana, filed a motion to intervene in this adversary and

---

[9] Doc. No. 6.

[10] Doc. No. 13.

[11] Doc. No. 32.

[12] Doc. No. 32.

[13] Doc. No. 87, Order Granting Modified Preliminary Injunction.

sought modification of the injunction in order to pursue an alleged direct cause of action against

Maryland Casualty Company ("MCC"), one of Debtors' insurers.[14]    This court denied the

request to modify, Doc. No. 109, and denied a motion to reconsider that order, Doc. No. 133,

which was ultimately upheld by the U.S. Circuit Court of Appeals for the Third Circuit. *Gerard*

*v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 Fed. Appx. 565 (3d Cir. 2004).

Certain plaintiffs in a prepetition Montana state court suit next attempted to pursue their

asbestos personal injury claims arising out of Debtors' Libby mining operations by including

Montana Vermiculite Company ("MVC") in their state court suit.  MVC was a former owner of

assets one of the Debtors purchased in 1963. *See* Doc. No. 153, Debtors' Motion to Expand the

Preliminary Injunction to Include Actions Against [MVC].  This court amended the injunction to

stay the actions against MVC on February 25, 2005.[15]  On August 22, 2005, Debtors filed a

motion to expand the preliminary injunction to include actions filed against the State of Montana

for, among other things, negligence in failing to warn about the risks of asbestos at the Debtors'

workplace and mine in Libby, Montana (the "State Court Actions").[16]  By Memorandum Opinion

---

[14] *See* Doc. No. 85.  The pleading is captioned and docketed as a motion to intervene filed on behalf of Carol Gerard but sought clarification of the scope of the injunction or, alternatively, a modification of the injunction so the proposed intervenor could obtain documents for use in her Maryland state court action.  Ms. Gerard then filed a separate motion seeking clarification of the preliminary injunction or, in the alternative, to modify the preliminary injunction so she could pursue MCC.  Doc. No. 86.

[15] The order entered on February 25, 2005, at Doc. No. 358 amended an order entered October 7, 2004, Doc. No. 299, which was entered in conjunction a Memorandum Opinion of the same date, Doc. No. 298.

[16] Doc. No. 359.

and Order dated April 13, 2007, this court denied the motion.[17]  This court held that related-to

subject matter did not exist for the purpose of expanding the injunction to include the State Court

Actions because the Supreme Court of Montana, in *Orr v. State of Montana*, 106 P.3d 100, 104

(Mt. 2004), provided a cause of action separate and apart from the conduct of Debtors and "the

State Court Actions will not be binding on the estate and will not have a direct impact on the

estate without additional intervening adjudication."[18]  The Debtors and the State of Montana

subsequently filed motions for reconsideration ("Reconsideration Motions").[19]

On May 21, 2007, this court held a hearing on the Reconsideration Motions and the

Expansion Motion.  At the hearing, the court took the Reconsideration Motions and the

Expansion Motion under advisement and orally entered a temporary stay pending its ruling on

the motions.  On June 6, 2007, the court entered its written order with respect to BNSF.[20]  The

---

[17]  Doc. Nos. 419 (Memorandum Opinion) and 420 (Order). The Memorandum Opinion is published at 366 b4 295 (Bankr.D.Del. 2007). On the same day this court denied the State of Montana's motion for relief from stay. *See In re W.R. Grace & Co.*, 2007 WL 1121970 (April 13, 2007).

[18]  *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 366 B.R. 295, 302 (Bankr.D.Del. 2007).

[19]  Debtors' Motion to Alter and Amend the Court's Order Denying Its Request to Expand the Preliminary Injunction to Include Actions Against the State of Montana, Doc. No. 427; State of Montana's Motion for Reconsideration of Court's Opinion and Order Denying Debtors' Motion for Expansion of Preliminary Injunction, Doc. No. 426. The Libby Claimants and the ACC filed Oppositions to the motions for reconsideration: Libby Claimants' Objection to Motions Filed by Debtors and State of Montana to Reconsider Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana, Doc. No. 442, and Opposition of the Official Committee of Asbestos Personal Injury Claimants to the Debtors' and the State of Montana's Motions to Reconsider the Court's Decision Denying a Stay of Litigation Against Montana, Doc. No. 443.

[20]  Doc. No. 453. The State of Montana's Motion for Reconsideration was referred to in this order and both were addressed in an order entered on August 29, 2007, Doc. No. 466. The
(continued...)

Libby Claimants[21] and the ACC[22] filed motions to alter or amend the order (the "Motions to

Alter Stay Order"), BNSF filed a joinder[23] to the Libby Claimants' Motion, and Debtors[24] and

the State of Montana[25] filed responses to the Motions to Alter Stay Order.  On July 23, 2007, a

hearing was held on the Motions to Alter Stay Order.  The court ruled orally at the hearing[26] and

entered a written order[27] on August 29, 2007 ("Stay Order"), holding that the temporary stay was

appropriate until the court ruled on the Reconsideration Motions and Expansion Motions.  The

Libby Claimants thereafter appealed the entry of the Stay Order to the United States District

Court for the District of Delaware.[28]  The Debtors filed a Motion to Dismiss the Appeal in which

the State of Montana joined and all parties filed corresponding briefs.[29]  The Libby Claimants

and BNSF filed opposition to the motions to dismiss.[30]  On January 22, 2008, the District Court

entered a Memorandum and Order granting the Debtors' and State of Montana's motions to

---

[20](...continued)
appeal from the order at Doc. No. 466 was denied.  *See* Doc. No. 485.

  [21]  Doc. No. 459.

  [22]  Doc. No. 458.

  [23]  Doc. No. 461.

  [24]  Doc. No. 463.

  [25]  Doc. No. 462.

  [26]  Transcript of 7/23/2007 Hearing, Case No.01-01139, Doc. No. 16445, at 97:24-98:2.

  [27]  Doc. No. 466.

  [28]  Doc. No. 467, Civil Action No. 07-609.

  [29]  Civil Action No. 07-609, Doc. Nos. 7-14.

  [30]  Civil Action No. 07-609, Doc. Nos. 11, 12, and 13.

dismiss.[31]  On March 27, 2008, this court entered a memorandum opinion and order denying the

Reconsideration Motions.[32]

The Montana Actions which Debtors request to  be covered by the Injunction, include

approximately 113 asbestos-related personal injury suits involving over 600 plaintiffs filed

postpetition against BNSF relating to its rail transportation of vermiculite derived from the

Debtors' former vermiculite ore mining operations in Libby, Montana.  Most of these actions

were filed against BNSF postpetition. Approximately four were filed against BNSF prepetition.

Most of the prepetition actions were filed against Debtors.  Only after Debtors filed bankruptcy

did the filings against BNSF increase dramatically.[33]

The relationship between Debtors and BNSF had a long history.  Between 1938 and

1995, BNSF and its predecessor entered into various agreements with the Debtors or their

predecessors (collectively, the "Agreements") relating to the Debtors' mining operations in

Libby, Montana.[34]  Through these Agreements, BNSF granted Debtors permission to use certain

BNSF property or granted the right of way for the Debtors to conduct certain operations across

---

[31]  Civil Action No. 07-609, Doc. No. 15; Adv. 01-771, Doc. Nos. 474, 475, 476.

[32]  Memorandum Opinion, Doc. No. 483 (duplicate at Doc. No. 485).  Order Denying
Motion to Reconsider, Doc. No. 484.

[33]At least four of the actions were brought against BNSF prepetition.  Doc. No. 398 at 7,
¶ 15.  None of the suits filed postpetition name the Debtors as a party-defendant, inasmuch as the
automatic stay was in place when the plaintiffs filed suit.  Doc. No. 398 at 8, ¶ 16.

[34]  BNSF's predecessor, The Great Northern Railway Company, and certain of the
Debtors' predecessors, The Zonolite Company or Universal Zonolite Insulation Company,
entered into various agreements between 1938 and 1956.  The Zonolite Company assigned all of
its rights, title, interest and equity in and to these several contracts to W.R. Grace & Co. in 1973.
In 1974, W.R. Grace & Co. and Burlington Northern, Inc. entered into yet another agreement.
The final agreement between and among Burlington Northern, W.R. Grace & Co.-Conn., and the
City of Libby was entered into in 1995.  Doc. No. 398, at 3, n. 3.

or on BNSF property. Under some of the agreements Debtors agreed to indemnify BNSF and to hold it harmless for liability with respect to injury or death resulting from certain actions associated with the loading and transport of ore from the mine using the BNSF railroad. Doc. No. 398 at 3. Debtors also agreed to obtain insurance for BNSF and did so. *Id.*[35] Specifically, the Debtors mined vermiculite ore from the Libby mine, which was then loaded by Debtors into railroad cars which BNSF employees attached to BNSF trains. The trains transported the ore to various places.[36]

The majority of the plaintiffs in the Montana Actions fall into one of two categories: (1) former railroad employees and (2) residents or former residents of the Libby area, including former mine employees or members of their families (denominated in Debtors' motion as "Community Claimants").[37] As explained in the affidavit of Dr. Terry Spear[38], railroad workers were exposed to "clouds of asbestos dust" from the railroad cars loaded with vermiculite ore and residents of Libby were exposed when these dust clouds drifted into the community.[39] The Libby Claimants allege that BNSF was negligent because it failed to warn or protect its workers

---

[35] There apparently is a dispute regarding whether BNSF is a named insured under some policies but that issue need not be determined for purposes of the issue before us. *See* Doc. No. 398 at 4, n.4.

[36] Doc. No. 398 at 3, ¶ 1.

[37] Doc. No. 398 at 8, ¶ 17.

[38] Doc. No. 417, Exh. B. Dr. Spear is a professor of industrial hygiene at Montana Tech in Butte, Montana. He has done investigations, reviewed information, and testified regarding conditions in Libby, Montana.

[39] Objection to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF, Doc. No. 417 at 4, quoting Affidavit of Dr. Terry M. Spear, Exhibit B to Doc. No. 417, at ¶ 28.

and the Libby community and failed to use a number of standard measures to control the dust.

They contend that the railroad operations were a major factor in the widespread contamination in

the community of Libby, Montana.[40]

Debtors shut down their Libby operations in 1990.


## DISCUSSION

### Jurisdiction

In their reply brief, Doc. No. 432, Debtors argue that the court has related-to subject

matter jurisdiction under 28 U.S.C. §1334(b) to expand the injunction to include the Montana

Actions against BNSF and that Debtors are entitled to injunctive relief under 11 U.S.C. §105(a).

In the briefs opposing the expansion of the injunction, the Libby Claimants, Doc. No. 418, the

ACC, Doc. No. 414, and BNSF, Doc. No. 413, argue that the court does not have related-to

subject matter jurisdiction and Debtors do not meet the requirements for a §105(a) injunction.

In *Matter of Zale Corp.*, 62 F.3d 746 (5th Cir. 1995), the Court of Appeals for the Fifth

Circuit explained that:

> Subject matter jurisdiction and power [under §105 of the
> Bankruptcy Code] are separate prerequisites to the court's capacity
> to act. Subject matter jurisdiction is the court's authority to
> entertain an action between the parties before it. Power under
> Section 105 is the scope and forms of relief the court may order in
> an action in which it has jurisdiction.

62 F.3d at 751 (citing *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American*

*Hardwoods, Inc.)*, 885 F.2d 621, 624 (9th Cir. 1989)). While aspects of the §105(a) analysis may

---

[40] Doc. No. 417.

be relevant to the related-to jurisdiction inquiry, the two inquiries are analytically distinct. *In re Combustion Engineering, Inc.*, 391 F.3d 190, 224 (3d Cir. 2004). Section 105(a) "does not provide an independent source of federal subject matter jurisdiction." *Id.* at 225. Therefore, this court must establish subject matter jurisdiction before considering the merits of a §105(a) injunction.

Section 1334(b) of title 28 provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b). Section 157(a) of title 28 permits the district court to refer "any or all cases . . . and proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district."

The generally accepted test for determining whether a bankruptcy court has subject matter jurisdiction over litigation between nondebtor third parties is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). However, as exhibited by *Pacor* itself, application of this test has proven to be difficult in cases involving indemnification and contribution.

In *Pacor*, John and Louise Higgins initially brought suit against Pacor, a distributor of chemical supplies, in Pennsylvania state court, seeking damages allegedly caused by Mr. Higgins's work-related exposure to asbestos supplied by Pacor. Pacor, in turn, filed a third party complaint impleading the Johns-Manville Corporation, which soon after filed a chapter 11 bankruptcy petition. In determining whether the bankruptcy court had subject matter jurisdiction, the Court of Appeals for the Third Circuit held that the primary action between the

11

third parties, Higgins and Pacor, would have no effect on the Johns-Manville bankruptcy estate. The court decided that:

> At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. . . . Even if the Higgins-Pacor dispute is resolved in favor of Higgins (thereby keeping open the possibility of a third party claim), Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor. Thus, the bankruptcy estate could not be affected in any way until the Pacor-Manville third party action is actually brought and tried.

743 F.2d at 995. The court held that a bare claim of common law indemnity was not enough to establish jurisdiction; any effect on the estate is indirect and contingent on intervening litigation. "[A]ny judgment received by the plaintiff . . . could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification." *Id.* That is, the outcome of the action between Pacor and Higgins would have no effect on the bankruptcy estate of Johns-Manville and a separate indemnification action would be required before an effect could be established.

The Court of Appeals for the Sixth Circuit adopted a different interpretation of the *Pacor* test. *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996), a case involving mass tort claims against shareholders of a chapter 11 debtor, the Sixth Circuit found related-to jurisdiction because of the likelihood of indemnity or contribution claims against the debtor from the shareholders, some which had been already been filed. The court found the significant part of the test to be this:

> A key word in [the] test is 'conceivable.' Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on 'the debtor's rights, liabilities, options, or freedom of action' or the 'handling and administration of the bankrupt estate.'

*Id.* at 491 (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991)).  The possibility of indemnity or contribution claims alone was considered sufficient to satisfy the *Pacor* test under the circumstances of that case where the court found that the possibility of contribution or indemnity liability was "far from attenuated."  *Id.* at 494.

Shortly after the *In re Dow Corning* decision, the district court, sitting as the bankruptcy court having withdrawn the reference with respect to three motions, reiterated its understanding of the decision of the Court of Appeals for the Third Circuit in *Pacor* in the case of *In re Federal-Mogul Global, Inc.*, 282 B.R. 301 (Bankr.D.Del.), *mandamus denied* 300 F.3d 368 (3d Cir. 2002), *cert. denied sub nom. DaimlerChrysler Corp. v. Official Committee of Asbestos Creditors,* 537 U.S. 1108 (2003), stating that "the broader principle is that [in cases cited] . . . the potential impact on the debtor's estate would have been direct with no intervening adjudication or joinder of issue necessary against the non-debtor to affect assets, re-prioritize creditors and thwart the bankruptcy court's administration of the estate."  282 B.R. at 307.  In *Federal-Mogul*, jurisdiction in the bankruptcy of debtor automobile part supplier was sought for the third party action between personal injury claimants and the automobile companies (including the "Big Three" Auto Makers) who used asbestos-containing automobile products purchased from debtors in their own products.  Applying its decision in *Pacor*, the Court of Appeals, in denying mandamus, held that related-to jurisdiction was lacking because it would take the intervention of yet another lawsuit before the defendants would have indemnity claims against Federal-Mogul,

noting that in *Pacor* the outcome of the suit between the nondebtors "could not result 'in even a contingent claim' against the debtor." 300 F.3d at 382.[41]

The district court in *Federal-Mogul* noted that in *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), *In re A.H. Robins Co.*, 828 F.2d 1023 (4th Cir. 1987), *cert. denied*, 485 U.S. 969 (1988), and *Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999), the decisions followed the Third Circuit's interpretation of *Pacor* and the finding of jurisdiction in the three cases could be "explained at least in part by the recognition that they each involved property or rights belonging to the estate." 282 B.R. at 307. *Celotex* involved the debtor's cash collateral, *A.H. Robins* concerned insurance proceeds, and *Halper* addressed a guarantee which was available as a creditor's alternative source of recovery. *Id.* The rulings in each of these third party cases would have had a direct effect on the estate.

This factual distinction between *Pacor* and *Celotex, A.H. Robins,* and *Halper* noted by the court in *Federal-Mogul* is also evident in the decisions to include the claims against Maryland Casualty Company ("MCC"), *Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 Fed. Appx. 565 (3d Cir. 2004), and Montana Vermiculite Company ("MVC"), *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 315 B.R. 353 (Bankr.D.Del. 2004), *reconsideration denied* 2008 WL 868034 (March 27, 2008),[42] in the injunction here.  MCC was

---

[41] The Court of Appeals noted that at the time of its decision denying mandamus, all courts of appeals except those in the Second and Seventh Circuits had adopted the Third Circuit's *Pacor* test with little or no variation. 300 F.3d at 381, citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 305-09 (1995).

[42] Doc. No. 485.

a workers compensation insurer for Debtors and a ruling against MCC would have had a direct

impact on the estates. In the MVC litigation this court explained that:

> In this case, if there is a judgment against MVC which resulted in
> damages for asbestos related injuries, the Montana Plaintiffs[[43]]
> would look to Royal with respect to the insurance policies and
> Debtors' indemnity obligations under their settlement with Royal
> would be triggered. The indemnity between Debtors and Royal is
> contractual; in *Pacor* a common law indemnity claim existed and
> was held to be an insufficient basis for "related to" jurisdiction.

315 B.R. at 359. Similarly, in *A.H. Robbins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986),

*cert. denied* 479 U.S. 876 (1986), an injunction was proper when suits against "indemnitees on

claims on which the indemnitees are entitled to indemnity by" debtor would result in "either a

binding judgment against the debtor . . . or . . . inconsistent judgments." 788 F.2d at 1008. [44]

---

[43] The Libby Claimants also call themselves "Montana Plaintiffs." *See*, for example, Doc. No. 442 designated as filed by Libby Claimants. However, the document filed at Doc. No. 442 refers to "Montana Plaintiffs."

[44] The position of the State Court Actions against the State of Montana in *W.R. Grace & Co., et al. v. Chakarian, et al. (In re W.R. Grace & Co.)*, 366 B.R. 295 (Bankr.D.Del. 2007), on the other hand, was nearly identical to the claims in *Pacor* and *Federal-Mogul*.

> Before any effect on Debtors can be realized, the State of Montana
> must first be found liable in state court and then pursue its claim
> for indemnification in bankruptcy court. While the court in Orr v.
> *State of Montana, supra,* found that a duty existed on behalf of the
> State, the case was remanded for determination of whether the
> State of Montana breached that duty. If breach is not found,
> indemnification/contribution is not possible. If breach is found,
> Montana Plaintiffs "would still be obligated to bring an entirely
> separate proceeding to receive indemnification." *Pacor , 743 F.2d*
> at 995. Montana law prohibits the State of Montana from litigating
> or establishing a factual basis (i.e., percentage of comparative
> fault) against Debtors for either contribution or indemnity during
> the course of the State Court Actions. *See* Mont. Ann. §27-1-703
> (1997), and *Plumb v. Fourth Judicial Dist. Court*, 279 Mont. 363,

(continued...)

15

The Montana Actions filed against BNSF are similar to the claims in *Celotex Corp. v. Edwards,* 514 U.S. 300 (1995), *In re A.H. Robins Co., Inc.*, 828 F.2d 1023 (4th Cir. 1987), *cert. denied,* 485 U.S. 969 (1988), and *Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999), and the claims against Maryland Casualty Company ("MCC"), *Gerard v. W.R. Grace & Co.(In re W.R. Grace & Co.),* 115 Fed. Appx. 565 (3d Cir. 2004), and Montana Vermiculite Company ("MVC"), *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 315 B.R. 353 (Bankr.D.Del. 2004), because property of the estates is implicated and, unlike the State Court Actions against the State of Montana, could have a direct impact on the estates.  BNSF asserts four avenues by which it has indemnification rights against Debtors, at least three of which will directly impact the estates if the Montana Actions filed against BNSF are permitted to proceed.[45]

---

[44](...continued)
> 927 P.2d 1011 (Mont. 1996) (entry of findings against non-party violates substantive due process).  A judgment against the State of Montana will not bind Debtors.  An intervening adjudication is necessary to affect the estate.
>
> . . . .
>
> Additionally, in *Orr,* it is the actions of the State of Montana, not Debtors, which are the basis of the claims.  The question in *Orr* became one of whether, assuming the State had the information, it had an independent responsibility to distribute or act upon the information for the benefit of the plaintiffs in the litigation.  "[T]he State had discretion to determine what information to gather, but once that information was gathered, it had no discretion about whether to distribute it."  *Orr*, 106 P.3d at 108.

366 B.R. at 301-02 (footnotes omitted).  As in *Pacor* and *Federal-Mogul*, the State Court Actions against the State of Montana were not binding on the estates and would not have a direct impact on the estates without additional intervening adjudication.

[45]  "Debtors do not acknowledge liability to BNSF under any of these circumstances."  Debtors' Reply in Support of Their Motion to Expand the Preliminary Injunction to Include Actions Against BNSF, Doc. No. 432, at 4.

16

These four avenues are contractual indemnification, policies on which BNSF claims to be a named insured, separate insurance paid for by the Debtors, and common law indemnification.[46] This court need not discuss common law indemnification because the Court of Appeals in *Pacor* held that a common law indemnity claim in and of itself was an insufficient basis for related-to subject matter jurisdiction. *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984).

BNSF has claimed contractual indemnification rights against the Debtors pursuant to 15 different agreements.[47] BNSF provided the Debtors with copies of 12 of the 15 agreements and an index specifically identifying the relevant indemnification provisions in all 15 agreements.[48] These agreements contain indemnities for actions including, *inter alia*, BNSF's own negligence. The existence of contractual indemnification rights was one of the reasons the court recognized its jurisdiction in *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 315 B.R. 353, 359 (Bankr.D.Del. 2004). In *Pacor*, the Court of Appeals for the Third Circuit distinguished the case before it from one in which there was a contractual indemnification right. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 995-6 (3d Cir. 1984).

BNSF has also alleged entitlement to defense and indemnification from the Insurers (1) under certain policies which were settled by the Debtors, (2) under which the Debtors agreed to indemnify and hold the Insurers harmless from any suits, and (3) where BNSF claims it is a named insured.[49]

---

[46] Doc. No. 432 at 5-6.

[47] *See* Doc. No. 432 at 4.

[48] Doc. No. 432 at 5, n. 11.

[49] Doc. No. 432 at 5. In its response to Debtors' motion to expand the preliminary
(continued...)

Another complication and indication of a direct impact on Debtors' estates that will be occasioned by the BNSF litigation concerns Debtors' Insurers. Debtors settled some of their insurance policy issues with their Insurers, the terms of which include, as to some policies, an obligation by Debtors to assume the defense or to indemnify the Insurers for the cost of defense. Certain of the Insurers have notified Debtors that demands for defense by BNSF against certain of the settled policies will trigger Debtors' obligations.[50] BNSF has made a demand on Insurers for defense in the Montana Actions[51] and has sought discovery from the Insurers in the state court litigation[52] who have in turn asserted that even if BNSF is unsuccessful in its claims against the policies, any demand made by BNSF on the insurers to defend under one of the policies triggers Debtors' obligation to either assume the defense or indemnify the Insurers for any costs with respect to the defense.[53] Additionally, Debtors allege that, even if the Debtors and BNSF do not share the insurance, the Debtors' estates are nonetheless impacted inasmuch as any separate

---

[49](...continued)

injunction to include BNSF, BNSF asserts that "[underlying its Motion for Clarification Of the Scope Of The Preliminary Injunction . . . [Docket No. 389], BNSF is seeking discovery from the Insurance Carriers as to the extent of any available independent, collateral insurance coverage for liability that may be imposed on BNSF . . . . The insurance policies are different policies than those that are involved in the settlement agreement between the Debtors and the Insurance Carriers and that are currently subject to the preliminary injunction." Doc. No. 413 at 2, ¶ 2. An order was entered on June 11, 2007, permitting BNSF to seek discovery of independent asbestos-related insurance policies that were not property of the estates, not policies in which any of the Debtors is an insured, or policies in which any Debtor has a claim to proceeds. Doc. No. 457. Nonetheless, the issue before us with respect to the Expansion Motion involves Debtors' conduct and products and, therefore, may involve insurance policies that are estate property.

[50]  Doc. No. 432 at 6.

[51]  Doc. No. 398 at 9.

[52]  Doc. No. 413 at 2, ¶ 2.

[53]  Doc. No. 432 at 6.

18

insurance policies issued by the Insurers were purchased by the Debtors' predecessors pursuant

to an indemnity agreement between Debtors' predecessors and BNSF.[54] These two avenues,

insurance indemnification and separate insurance paid for by the Debtors, further establish the

direct impact on the estates occasioned by the Montana Actions against BNSF.

Thus, the court has jurisdiction to consider whether to expand the preliminary

injunction.[55]

It should also be noted that after the appeals of this court's order (Doc. No. 466)

temporarily staying actions against the State of Montana and BNSF pending resolution of

various motions, including the one at bench, were dismissed, the Libby Claimants, Debtors, and

BNSF submitted letters to this court, pursuant to Del. Bankr. L.R. 7007-1(b),[56] calling to the

court's attention and briefly discussing the opinion of the Court of Appeals for the Second

Circuit in *In re Johns-Manville Corp. (Travelers Casualty and Surety Co., et al. v. Chubb*

*Indemnity Insurance Co., et al.*, 517 F.3d 52 (2d Cir. 2008).[57] The *Johns-Manville* opinion is

---

[54]  Doc. No. 432 at 6, n.16.

[55]  *See also Gerard v. W.R. Grace & Co.(In re W.R. Grace & Co.),* 115 Fed. Appx. 565, 567-8 (3d Cir. 2004) (Injunctive relief proceeding initiated by debtor in its own chapter 11 is assuredly related to and arose under the bankruptcy and may be a core proceeding).

[56]  The Local Rule provides:
> Citation of Subsequent Authorities.  No additional briefs, affidavits or other papers in support of or in opposition to the motion shall be filed without prior approval of the Court, except that a party may call to the Court's attention and briefly discuss pertinent cases decided after a party's final brief is filed or after oral argument.

[57]  Letter from Daniel C. Cohn, Esquire to the Honorable Judith K. Fitzgerald Re: Injunction Pleadings, Doc. No. 478;  Letter to Judge Fitzgerald (from Debtors) regarding Manville Opinion, Doc. No. 479; Letter to Judge Fitzgerald regarding Manville Opinion from State of Maryland, Doc. No. 480.

not dispositive of the Expansion Motions.  The facts are distinguishable from those currently

before this court.  In the present case, Debtors seek to expand the preliminary injunction

preconfirmation to protect assets of their estates.  The expansion of the injunction in *Johns-*

*Manville* was sought postconfirmation by an insurer to protect it from statutory and common law

claims based upon an alleged independent duty owed to plaintiffs in those actions.  Although the

"independent duty" allegation in *Johns-Manville*  is similar to that lodged against BNSF, the

basis for the injunction here is different.  In *Johns-Manville*, the estate had been wound up

decades before the court considered the injunction.  Travelers conceded that the compensation

sought for its alleged tortious conduct was not related to proceeds of Manville's policies.  *Id.* at

63.  Furthermore, the plaintiffs did not rely on Manville's insurance policies or seek insurance

proceeds for recovery.  *Id.* at 63-64.  In sum, there was no effect on the <u>*res*</u> of the Manville estate

by the actions against Travelers, a nondebtor insurer, and the bankruptcy court had no subject

matter jurisdiction to enjoin the type of suits at issue, postconfirmation, against Travelers.  *Id.* at

68.  In the present case, the contractual indemnity agreements will involve a direct impact on

these preconfirmation estates by requiring Debtors to defend the actions and any judgment

against BNSF as the result of the Montana Actions will have a direct effect on the *res* of the

estates.

      As stated, Debtors have established three separate ways in which the Debtors' estates will

be directly affected if the Montana Actions continue to proceed against BNSF.  For the reasons

discussed above, this court has related-to subject matter jurisdiction for the purpose of

considering whether to expand the injunction to include BNSF.  We therefore, now turn to the

analysis of whether an injunction under §105(a) is appropriate.

**Expansion of the Injunction**

Two factors courts generally use to determine whether an injunction seeking to expand the protections of the automatic stay to nondebtor parties under §105(a) is appropriate are: (1) whether the nondebtor and debtor share an identity of interest such that a suit against the nondebtor is essentially a suit against the debtor and (2) whether the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization. *See, e.g., In re Prussia Assoc.*, 322 B.R. 572, 599 (Bankr.E.D.Pa. 2005), *citing Matter of Zale Corp.*, 62 F.3d 746, 761 (5th Cir. 1995)(discussing identity of interest and adverse impact in the context of issuing an injunction). *See also Matter of Rickel Home Ctrs., Inc.*, 199 B.R. 498, 500-01 (Bankr.D.Del. 1996)(discussing the same two factors in the context of extending the automatic stay to lawsuits against nondebtors). This is often referred to as the "unusual circumstances" test. *See In re A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

**1. Identity of Interests**

BNSF and the Debtors share an identity of interest as it is the Debtors' operations and conduct at the Libby mines that are at the core of the issues raised in the Montana Actions filed against BNSF. Indeed, James Roberts, trial counsel for BNSF defending the Montana Actions, stated that "Grace's operations at Libby were a proximate cause of the individual Plaintiffs'

injuries[58]" and that "BNSF anticipates that it may assert in excess of 1,000 indemnification

claims against Grace."[59]

Moreover, the contractual indemnification agreements discussed above indicate an

identity of interest between BNSF and Debtors. The Court of Appeals for the Fourth Circuit

found the "identity of interest" test satisfied when the judgment against the third-party defendant

would in effect be a judgment or finding against the debtor. *A.H. Robins Co., Inc. v. Piccinin,*

788 F.2d 994 (4th Cir. 1986). The court specifically determined that an indemnification right

implicates such an "identity of interest." The court stated that:

> [a]n illustration of [an identity of interest] situation would be a suit
> against a third-party who is entitled to absolute indemnity by the
> debtor on account of any judgment that might result against them
> [*sic*] in the case. To refuse application of the statutory stay in that
> case would defeat the very purpose and intent of the statute.

*Id*. at 999. *See also In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004).

The ACC and the Libby Claimants argue that the "unusual circumstances" test is not

satisfied with respect to BNSF because the allegation in the Montana Actions is that BNSF has

independent liability. No direct action statute has been asserted. BNSF's liability is alleged to

arise from its dealings with Debtors, implicates Debtors' insurance, and defense of the Montana

Actions by BNSF would require Debtors to defend those actions. Therefore the Montana

Actions will have a direct impact on Debtors' estates. Furthermore, the Court of Appeals for the

Fourth Circuit in *In re A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), in

---

[58]Motion of BNSF for Clarification of the Scope of the Preliminary Injunction, or in the Alternative, for Relief from the Preliminary Injunction, Doc. 389, Affidavit of James Roberts at 3.

[59] *Id*. at 2.

discussing applicability of §362 to nondebtor co-defendants, held that a stay may be appropriate

where there are "unusual circumstances" which can exist "when there is such identity between

the debtor and the third-party defendant that the debtor may be said to be the real party defendant

and that a judgment against the third-party defendant will in effect be a judgment or finding

against the debtor."  788 F.2d at 999.  *Accord Matter of Zale Corp.*, 62 sf3d 746, 761 (5th Cir.

1995).

### 2.  Adverse Impact on Debtor's Ability to Accomplish Reorganization

Considering the three avenues through which the Montana Actions can directly affect the

Debtors' estates, the adverse impact on Debtors is obvious.  As mentioned above, it is

anticipated that BNSF may assert in excess of 1,000 indemnification claims against the Debtors

through contractual indemnification agreements[60] and under insurance policies on which BNSF

is named or additionally insured.[61]  Additionally, because the Debtors' Libby mine operations

and actions are at the core of the Montana Actions, allowing the Montana Actions to proceed

will require the Debtors to defend BNSF while, at the same time, defending their own products,

---

[60]  Motion of BNSF for Clarification of the Scope of the Preliminary Injunction, or in the Alternative, for Relief from the Preliminary Injunction, Doc. 389, Affidavit of James Roberts at 2, ¶ 6.  We acknowledge that the Court of Appeals for the Ninth Circuit recently discussed the "assertion" of indemnity claims as distinguished from the right to recover an indemnity in *In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007).  In that case, the court found that a bare allegation that a party would make a claim to indemnification would not be sufficient to support proof of irreparable harm to the debtor.  Here, however, the record contains proof of fifteen insurance policies that have contractual indemnities.  The parties may dispute the eventual liability of Debtors thereunder but, at this stage, in determining the balance of harm to the parties, there is clear documentation that Debtors will be subject to indemnity claims.  That evidence, coupled with BNSF's acknowledgment that it will make claims against those indemnities convinces this court that the balance of harm to Debtors outweighs any countervailing harm to the other parties in awaiting the outcome of the reorganization.

[61]  Doc. No. 389, at 2-3.

23

business operations, etc., in essence, the very claims they filed bankruptcy to stop through the

auspices of the automatic stay.  Such a diversion of resources would retard the administration of

the chapter 11 cases by requiring the time and commitment of individuals intimately involved in

the chapter 11 cases at this critical time, seven years into the case, when based on a settlement

with asbestos constituencies regarding the personal injury estimation and issues with respect to

property damage claims are in the process of being resolved, the parties are preparing to go

forward with disclosure and plan confirmation hearings.  Because of the overlap of issues

relevant to the chapter 11 proceedings and the Montana Actions, Debtors' participation would

also duplicate expenses and unnecessarily divert if not deplete the resources and assets of the

estates.

### Traditional Standards for Injunctive Relief

The Libby Claimants, Doc. No. 417, and the ACC, Doc. No. 414, both asserted that the

Debtors must also meet the four traditional equitable factors for obtaining a preliminary

injunction, as a showing of an identity of interest and adverse impact alone is insufficient  Doc.

No. 417 at 11-28, 18-19; Doc. No. 414 at 2, 16-17.  In support of this proposition the Libby

Claimants[62] and the ACC[63] both cited *The Pitt News v. Fisher*, 215 F.3d 354, 365-66 (3d Cir.

2000), *cert. denied* 531 U.S. 1113 (2001), which lists the four factors as: (1) a substantial

likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will

suffer irreparable injury if the injunction is not granted; (3) the extent to which the enjoined

---

[62]  Doc. No. 417 at 12.

[63]  Doc. No. 414 at 16.

party would suffer irreparable injury if the injunction is issued, and (4) public interest. Debtors

argued that because *The Pitt News* is a first amendment opinion which does not involve chapter

11 debtors, it is not relevant to this matter. Debtors assert that the two factor test, which this

court applied in the past to expand the preliminary injunction to include MVC[64] and MCC,[65] is

the appropriate standard.

Although the Debtors did not address the matter in their arguments, the court will address

the traditional standards for injunctive relief. In doing so, this court notes the decision of the

Court of Appeals for the Ninth Circuit in *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1096 (9th

Cir. 2007), in which the court explained that in a bankruptcy case where the debtor seeks a

preliminary injunction to stay a proceeding where the debtor is not a party, the court must apply

the "usual preliminary injunction standard," *id.* at 1096, and "consider whether the debtor has a

reasonable likelihood of a successful reorganization, the relative hardship of the parties, and any

public interest concerns if relevant." *Id.*

### 1. Likelihood of Success on the Merits

The ACC asserts that Debtors cannot prevail on the merits because BNSF will never be

entitled to a §524(g) injunction on the basis of derivative liability.[66] That, however, is not the

test in a bankruptcy reorganization case. *See In re Excel Innovations, Inc.,* 502 F.3d 1086, 1096

(9th Cir. 2007)("a bankruptcy court must consider whether the debtor has a reasonable likelihood

of a successful reorganization"). Neither Libby Claimants nor the ACC addressed the reasonable

---

[64] *In re W.R. Grace & Co.*, 315 B.R. 353 (Bankr.D.Del. 2004).

[65] *Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 Fed. Appx. 565 (3d Cir. 2004).

[66] Doc. No. 414 at 16.

25

likelihood of successful reorganization. However, the underlying objective of the request to expand the preliminary injunction is to prevent the Montana Actions from negatively impacting the Debtors' reorganization. All the evidence before the court indicates that the parties are working toward plan confirmation and a successful reorganization is likely. Nearly all the property damage claims at issue in Grace have been addressed and, after approximately seven days of trial with additional days reserved through June, 2008, a settlement has been reached, although yet to be finalized, regarding personal injury estimation.[67] Competing plans have been filed[68] and, with settlement of the personal injury estimation issue[69], the confirmation process is underway. Thus, despite seven years in chapter 11, no party is suggesting that the case should be converted to chapter 7 or that reorganization is not likely.

## 2. Relative Hardship of the Parties.

The second and third factors of the traditional standards governing preliminary injunctions are whether the debtor will suffer irreparable injury without the injunction and the harm to others which will occur if the injunction is granted. In the context of a bankruptcy proceeding, the Court of Appeals for the Ninth Circuit in *In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007), addressed these two factors to determine the "relative hardship of the

---

[67] *See* note 69, *infra*.

[68] Debtors filed a plan and disclosure statement in 2004 (Doc. Nos. 6895, 6896) and amended same at Doc. Nos. 7559, 7560. Exclusivity was terminated by order of July 26, 2007, Doc. No. 16396. Thereafter the ACC and the Future Claimants' Representative filed their competing plan in November of 2007 at Doc. No. 17306. No disclosure statement has been filed in connection with that plan.

[69] A settlement was announced on April 7, 2008, between and among Debtors, the ACC, and the Future Claimants Representative ("FCR"). The unsecured creditors committee, property damage, and equity committees are in the process of reviewing the terms.

parties." *Id.* at 1096.  This court will compare the potential irreparable harm Debtors will suffer

without the injunction against the potential harm to BNSF and the Libby Claimants if the

injunction is granted.  Based on the analysis below, and as a matter of bankruptcy law, we

conclude that the relative hardship of the parties favors the Debtors.

### A. Debtors[70]

Allowing the Montana Actions to proceed could subject the Debtors to additional fixed

and liquidated indemnity claims.  As stated earlier, the record indicates that BNSF has

contractual indemnification rights and is either a named or additional insured under Debtors'

policies and the Montana Actions implicate Debtors' conduct and product.  Therefore, Debtors

have an obligation to defend, which creates an immediate effect on these estates, and face the

possibility of liability on the contractual indemnity.  Any judgment against BNSF would create

an indemnity claim by BNSF against Debtors.  The Montana Actions involve Debtors' conduct

in using BNSF railroad cars and loading dock to transport Debtors' asbestos product.  Therefore,

by permitting the actions to proceed against BNSF, Debtors face substantial risk, should

judgments be entered against BNSF, of an immediate liquidated claim against Debtors.

If the actions proceed against BNSF without Debtors, Debtors will not have an

opportunity to defend their conduct or products.  Debtors have asserted that record taint and

collateral estoppel will adversely effect these estates.[71]  The Court of Appeals for the Third

Circuit, in *Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.),* 115 Fed. Appx. 565 (3d Cir.

---

[70] Nothing in this Memorandum Opinion is intended to or shall be construed as a ruling with respect to any party's rights or liabilities, including Debtors'.

[71] Doc. No. 398, at 16-18; Doc. No. 332, at 7-8.

2004), has already rejected the Libby Claimants' theory that collateral estoppel and record taint

were not legitimate concerns for the Debtors in granting the preliminary injunction.

> Plaintiffs' counsel's theory that under a principal/agent analysis the absence of Grace
> would protect it form collateral estoppel should not be tested, at Grace's peril.  It is more
> supposition then certainty at this juncture. [FN[72]] Furthermore, the courts have never
> adopted the absence of collateral estoppel as the test for preventing actions from
> proceeding against third parties when the debtor is protected by the automatic stay.
> Rather, courts employ a broader view of the potential impact on the debtor. The standard
> for the grant of a stay is generally whether the litigation "could interfere with the
> reorganization of the debtor," *In re A.H. Robins Co.*, 828 F.2d 1023, 1025 (4th Cir. 1987)
> or "would interfere with, deplete or adversely affect property of [the] estates or which
> would frustrate the statutory scheme of chapter 11 or diminish [the debtor's] ability to
> formulate a plan of reorganization," *Johns-Manville Corp. v. Asbestos Litig. Group (In re
> Johns-Manville Corp.)*, 26 B.R. 420, 436 (Bankr. D.N.Y., 1983). Accordingly, the
> plaintiffs had to show that the Bankruptcy Court's ruling to that effect was in error with
> respect to the possible impact of The Lawsuit.

---

[72] *Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 Fed. Appx. 565, 569 fn. 4
(3d Cir. 2004) ("Plaintiffs' counsel urges that collateral estoppel would not be applied to Grace
as a result of issues decided in the course of litigating The Lawsuit, but they offer little authority
for this sweeping proposition.  We think the issue to be at least unclear.  *See United Nat'l Ins.
Co. v. Equip. Ins. Managers*, No. 95-CV-0116, 1997 U.S. Dist. LEXIS 6177, at *11-13 (3d Cir.
May 6, 1997) (holding that because a corporation who was a debtor in bankruptcy might be
"impaired or impeded by proof at trial only of it officers" and could be bound by collateral
estoppel as a result of corporate agency principles, suit against the individual corporate officers
should not be allowed to proceed independently of the debtor); *In re American Film
Technologies, Inc.*, 175 B.R. 847, 850 (Bankr. D. Del. 1994) (holding that a potential finding of
liability against directors of the corporation would be for acts undertaken as agents of the
corporation, and thus would expose the corporation to the risk of being collaterally estopped
from denying liability for the director's actions).  Also, in *In re Johns-Manville Corp.*, 40 B.R.
219, 225 (S.D.N.Y. 1984), the court did comment on the potential effect that witness testimony
could have on the debtor.  It stated, "once a witness has testified to a fact, or what sounds like a
fact, that witness may be confronted with his prior testimony under oath in a future proceeding
directly involving Manville, whether or not Manville was a party to the record on which the
initial testimony was taken.  Once an admission against interest is made, under oath or otherwise,
by the agent of a party, that admission stands for all time.  No matter what Lake may stipulate,
the thousands of other claimants and cross-claimants who are after Manville's assets, would be
entitled to use the product of such discovery.")

*Id.* at 569-70.  Under this "broader view of the potential impact on the debtor," this court takes into account the risks of collateral estoppel and record taint.  Additionally, forcing the Debtors to now participate in the Montana Actions to prevent these adverse consequences (indemnity, collateral estoppel, and record taint) will encumber the estates with additional litigation burdens from which the stay specifically protects them.

### B. BNSF

BNSF asserts that it will be harmed if the Montana Actions against it are stayed because once the injunction is lifted witnesses will no longer be available or their memories will have faded and facts to support BNSF's defenses may no longer be available.  BNSF identifies neither any  witnesses who may be lost nor any facts that are subject to disappearing if the actions against BNSF are delayed.  Thus, it has not established harm and any harm it has alleged is (1) no different from that suffered by any other creditor in a bankruptcy case whose state law claims or actions are delayed by the bankruptcy and (2) any harm to BNSF is far outweighed by the prejudice to Debtors if the state court actions proceed against BNSF at this time.  As to Debtors, first the automatic stay prevents any action against them, or their estates or property and Debtors' interests and property would be directly affected by the state court actions.  Second, Debtors are, as stated, devoting substantial attorney time and resources to this bankruptcy case in order to resolve critical issues and proceed to plan confirmation.

### C. Libby Claimants

The Libby Claimants assert that the harm caused by expanding the injunction is that it allows sick and dying claimants to continue to suffer without compensation.  The Libby Claimants raise the same arguments here that they raised in connection with a motion for relief

from the automatic stay so that they could proceed to litigate in state court. Doc. No. 245. This

court denied that motion for relief from stay by orders dated August 25, 2004,[73] after a hearing[74]

at which the Libby Claimants presented documentary evidence. However, the court permitted

the parties to propose a procedure by which preservation of testimony could be accomplished

pending plan confirmation. The parties were ordered to

> lay out the procedures whereby a motion that complies with Rule
> 27(c) . . . be filed along with the copies of the medical evidence
> that [will] be used to support the motion, . . . there must be an
> allegation by counsel that he has interviewed the client and
> believes that it's necessary to go forward with the deposition for
> whatever reasons counsel feels are appropriate in addition to the
> medical criteria . . . . That has to be filed and served on all parties.
> . . . In the event that someone is so ill that it's necessary to take
> that deposition without complying with those case management
> procedures, I always will consider some emergency motion.[75]

At a hearing on August 23, 2004, the court acknowledged that the delays caused by the

proceedings affect all "asbestos victims" and that was why the court was "pushing the debtor to

get a plan through . . . and get people who are entitled to compensation compensated."[76] The

diversion of time, effort and resources that would be required if the Montana Actions proceed

would further delay the reorganization process, and implicate estate property.[77]

---

[73] The orders are at Doc. Nos. 266, 267, and 268.

[74] The transcript of that hearing, conducted on August 23, 2004, is at Case No. 01-1139, Doc. No. 6266.

[75] Transcript of 4/23/04, Case No. 01-1139, Doc. No. 6266 at 73-74. The personal injury case management order entered in this case has been amended several times.

[76] Case No. 01-01139, Doc. No. 6266, Transcript of 8/23/04, at 55.

[77] The Libby Claimants also contend that the preliminary injunction should not be expanded to include BNSF because Debtors' proposed plan does not provide payment for 24-
(continued...)

### 3. Public Interest

The public interest is a somewhat nebulous factor to be considered in determining whether an injunction should issue in bankruptcy cases. In this case, due to the volume of claims, jurisdictional spread,[78] and numerous controversies, completing the reorganization process also serves the public interest by resolving thousands of claims in a uniform and equitable manner. Thousands of claims, including environmental issues, have already been resolved in this case in such a manner and more are being addressed. Thus, the bankruptcy process has been utilized to the fullest extent and should continue to be through conclusion of the reorganization. To the extent relevant, the public interest weighs in favor of issuing the preliminary injunction to include BNSF.

### CONCLUSION

Based on the discussion above, expansion of the preliminary injunction satisfies the four traditional standards for injunctive relief. Additionally, to the extent the unusual circumstances test differs from the traditional standards used to impose a preliminary injunction, both are met here in that Debtors and BNSF share an "identity of interest" and Debtors will be adversely impacted by the prosecution of the Montana Actions. We find that it is necessary to expand the

---

[77](...continued)
hour end stage care and home assistance to those with asbestos disease. For purposes of determining whether a successful reorganization is likely, which is the issue before us with respect to the preliminary injunction, whether a plan has to provide care and assistance to certain asbestos creditors is immaterial at this stage and will not be the ultimate determining factor in whether a plan is or is not confirmed.

[78] Debtors conduct business in the United States and several other nations.

31

relief granted by the preliminary injunction to specifically include the Montana Actions filed

against BNSF with respect to Debtors' former vermiculite mining operations in Libby, Montana.

An appropriate order will be issued.


DATE:  April  11, 2008.

Judith K. Fitzgerald
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:                                                    ( | |
|                                                          ( | |
| W.R. GRACE & CO., <u>et al.</u>,                          ( | Bankruptcy No. 01-01139 (JKF) |
|                                                          ( | Jointly Administered |
|          Debtor(s).                                       ( | |
|                                                          ( | Chapter 11 |
|                                                          ( | |
|                                                          ( | |
| W.R. GRACE & CO., et al.,                                 ( | |
|                                                          ( | |
|          Plaintiffs.                                      ( | |
|                                                          ( | |
|      -against-                                            ( | |
|                                                          ( | Adversary No. A-01-771 |
| MARGARET CHAKARIAN, *et al.*,                             ( | |
| AND JOHN DOES 1-1000,                                     ( | Related to Doc. No. 359 |
|                                                          ( | |
|          Defendants.                                      ( | |
|                                                          ( | |

**ORDER EXPANDING THE PRELIMINARY INJUNCTION**
**TO INCLUDE ACTIONS AGAINST**
**BURLINGTON NORTHERN AND SANTE FE RAILROAD**

**AND NOW**, this <u>11th</u> day of April, 2008, for the reasons expressed in the foregoing

Memorandum Opinion, it is **ORDERED, ADJUDGED**, and **DECREED** that the objections are

overruled and the Debtors' Motion to Expand the Preliminary Injunction to Include Actions

Against Burlington Northern and Sante Fe Railroad ("BNSF"), which seeks to expand the relief

granted by the preliminary injunction to specifically include actions against BNSF for exposure

of some kind to the Debtors' former vermiculite mining operations in Libby, Montana (the

"Montana Actions"), is **GRANTED**.

It is further **ORDERED, ADJUDGED**, and **DECREED** that the Injunction, as defined in the foregoing Memorandum Opinion, is hereby expanded to include BNSF as a Nondebtor Affiliate and that the Montana Actions and all other similar actions that have been or may be brought against BNSF that arise from alleged exposure to vermiculite ore from the Debtors' Libby mining operations are and shall be stayed until further order of the Court.

Counsel for Debtors shall immediately serve a copy of this Opinion and Order on all parties in interest and file a certificate of service forthwith.

Judith K. Fitzgerald
United States Bankruptcy Judge

jmd

34